**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3863
_____

UNITED STATES OF AMERICA

v.

PAUL E. PAVULAK

Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
District Court No. 1-09-cr-00043-001
District Judge: The Honorable Sue L. Robinson

Argued September 13, 2012

Before: SMITH, and CHAGARES, *Circuit Judges*
and ROSENTHAL, *District Judge**

_____

* The Honorable Lee H. Rosenthal, United States District

(Filed: November 21, 2012)

Jack A. Meyerson
Matthew L. Miller     [ARGUED]
Meyerson & O'Neill
1700 Market Street
Suite 3025
Philadelphia, PA  19103
    *Counsel for Appellant*

Bonnie L. Kane
Andrew M. McCormick
United States Department of Justice
Criminal Division, Public Integrity Section
1400 New York Avenue, N.W.
Washington, DC  20530

Edward J. McAndrew    [ARGUED]
Office of United States Attorney
1007 North Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE  19899
    *Counsel for Appellee*

---

Judge for the United States District Court for the Southern District of Texas, sitting by designation.

_____

OPINION

_____

SMITH, *Circuit Judge.*

The Delaware State Police obtained search warrants for Paul Pavulak's email account and workplace after receiving information that he was viewing child pornography on his workplace computers. The evidence that was seized confirmed Pavulak's involvement in child pornography, and a jury subsequently convicted him of possessing and attempting to produce child pornography, attempting to entice a minor, and committing crimes related to his status as a sex offender. The District Court sentenced him to life imprisonment on the attempted-production conviction and to 120 months' imprisonment on the remaining counts.

Pavulak now contends that the District Court should have suppressed the evidence obtained pursuant to the warrants. He argues that the magistrate lacked probable cause to issue the search warrants. Those search warrants were supported by an affidavit that pointed to Pavulak's prior child-molestation convictions and labeled the images, which had been reported by informants, simply as "child pornography." No further details concerning the images' content appeared in the affidavit. We conclude that the affidavit was insufficient

3

to establish probable cause for child pornography. However, because the officers reasonably relied on the warrants in good faith, we agree that the District Court properly denied suppression. Pavulak's remaining challenges to his convictions and life sentence are meritless. We will therefore affirm his convictions and sentence.

I.

A.     *Factual Background*

This is not Paul Pavulak's first encounter with the criminal law. He has twice pled guilty to unlawful sexual contact in the second degree under Delaware law—once in June 1998 and again in April 2005. The first conviction was for molesting the eleven-year-old daughter of his live-in girlfriend from September 1997 through January 1998. As a result, the Delaware Superior Court sentenced Pavulak to four years' probation. While on probation for that conviction during the summer of 1999, Pavulak repeated similar conduct with the nine-year-old daughter of his new girlfriend, resulting in a second conviction in 2005 and two years in prison.[1]

These state convictions required Pavulak to

---

[1] The record does not identify the reason for the delay between Pavulak's conduct and the second conviction.

register as a sex offender and to keep his residential, work, and email addresses up to date with the Delaware State Police. After being released from prison on July 1, 2008, Pavulak purported to do exactly that. He informed the Delaware State Police that he was unemployed and staying at the Fairview Inn in Wilmington, Delaware. Throughout the remainder of the year, Pavulak maintained this account of unemployment and hotel living.

But the Delaware State Police soon discovered that Pavulak was not telling the whole story. In October 2008, Delaware State Police Detective Robert Jones received a hotline call from Erica Ballard. Ballard informed the police that her husband Curtis Mack, an employee at Concrete Technologies, Inc. ("CTI"), had observed Pavulak working and living part-time at the CTI office since his release, information that his sex-offender registration did not include. Ballard also told the police that Pavulak was planning a trip to the Philippines where he intended to meet women. Detective Jones followed up with Mack, who not only confirmed his wife's tip but also provided additional details. According to Mack, Pavulak was using an unregistered Yahoo! email address (Pavy224@yahoo.com), was accessing sexually suggestive images of children on computers at the CTI office, and had scheduled a month-long trip to the Philippines between December 2008 and mid-January 2009. Detective Jones also contacted

another CTI employee, Jahdel Riggs, who confirmed all of Mack's information except Pavulak's email address.

Through investigation, the Delaware State Police successfully corroborated some of the information provided by Mack and Riggs. As confirmed by federal agents and Pavulak's updated Delaware Sex Offender Registry address, Pavulak was in the Philippines from early December 2008 to January 2009. By subpoenaing Yahoo!, the police also discovered that the Pavy224@yahoo.com email account was created by a "Mr. Paul Pavy," was accessed from the CTI office on December 8, 2008, and was accessed from the Philippines from December 10, 2008, through January 6, 2009. The police further verified the existence and location of the CTI office, its ownership by Pavulak's adult children, and his Delaware state convictions— leading the police to obtain an arrest warrant for Pavulak's failure to register his employment at CTI.

Armed with the informants' information and the results of their investigation, Detective Nancy Skubik of the Delaware State Police Child Predator Task Force applied to the Delaware Superior Court for New Castle County for warrants to search the CTI office and the Pavy224@yahoo.com account for child pornography. In her probable-cause affidavit[2] for both warrant

---

[2] The affidavits for both search-warrant applications are identical in all aspects relating to the probable-cause

applications, Detective Skubik described the two tips, Pavulak's prior Delaware convictions from 1998 and 2005, and the information corroborated by her investigation. The affidavit relayed that Riggs had seen Pavulak "viewing child pornography" of females "between 16 and 18 years old" and Mack had seen "images of females between the ages of 12 to 15 years on Pavulak's computer" that had been sent to Pavulak via email. But the affidavit neither defined what was meant by the label "child pornography" nor provided any further details about the images' content.

Based on that affidavit, the Delaware Superior Court issued search warrants on January 13, 2009, for the CTI office and Yahoo! account. Early in the morning of January 19, Delaware State Police officers, including Detectives Jones and Skubik, executed the search warrant at CTI's office. The police arrested Pavulak, the only person present in the CTI office, based on outstanding warrants for failure to register his employment at CTI and his Yahoo! email address. After receiving his *Miranda* rights,[3] Pavulak admitted that he worked for CTI and used the Pavy224@yahoo.com email address while in the Philippines.

During the search, officers seized two computers.

determination, so we refer to them as though they were a single affidavit.

[3] *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

The first, a Hewlett-Packard laptop, was found in a rear office where Pavulak appeared to be living; a bed, his clothing, and toiletries were in the room. The laptop was locked by a single password-protected Windows user account. The second computer, a Hewlett-Packard desktop, was recovered from the receptionist area. Each computer contained thousands of images of child pornography.

Yet the search uncovered more than just the sought-after images of child pornography. Evidence recovered from the computers revealed that, in August 2008, Pavulak used his Yahoo! username "Pavy224" to create a profile on www.cherryblossoms.com, a website allegedly used by sex tourists for soliciting prostitutes in the Philippines. This website led him to Ara Duran, a twenty-two-year-old Philippine woman and mother of two-year-old Jane Doe.[4] Emails that Pavulak sent Duran showed his immediate interest in the age and sex of Duran's child. Pavulak told Duran (via email) that he was looking for a wife with an "aggressive" and "very active open sex desire"[5] similar to his own and who was willing to "experiment with different possibilities about sex." On October 1, Duran responded, believing them to

---

[4] Like the parties, we refer to the daughter as "Jane Doe" to protect her privacy.

[5] Any typographical errors in text messages or chat logs appear in Pavulak's original communications.

be a "good match" and indicating that she "bought more panties" for herself and her daughter. Pavulak looked forward to "dressing" Duran and her daughter. The two made plans to meet around Christmas during Pavulak's trip to the Philippines. He reserved a hotel room for their meeting, preferring the "matrimonial room" as his first choice because it had a "king size bed" in which the three of them would "fit fine." While awaiting their rendezvous, Pavulak "reall[y] want[ed] to see pictures" of Duran and Jane Doe—a request that Duran obliged.

While Pavulak was in the Philippines, he visited several women he met online and spent time with Duran and Jane Doe. He took photographs of Duran and Jane Doe, some of which depicted Duran or Pavulak nude or engaging in sexual activity. He also recorded videos of his sexual activity with Duran, one of which portrays Duran performing oral sex on Pavulak. That video, as Pavulak tells her, "will be [Jane Doe's] training video" so Duran can "show her how to [perform oral sex]."

During Pavulak's return to the United States, he sent Duran several text messages about including Jane Doe in their sexual activities. He "hope[d]" that Jane Doe would "like it too"; asked Duran to "teach her everything"; indicated he would perform oral sex on Jane Doe and instructed Duran to do so in the interim "so she likes it";[6] and wondered if Duran's "really good"

---

[6] This text message remained in Pavulak's unsent

instruction of Jane Doe would allow Jane Doe to perform oral sex on Pavulak "next December." Pavulak believed that Duran could "make it all work out for the three of [them]" to have a "happy sex life." Eager to see them again soon, Pavulak scheduled an online webcam chat with Duran for the morning of January 18.

That morning, Pavulak chatted with Duran using the laptop from the CTI office. They discussed Jane Doe's involvement in their sexual activities. We regret the need to recite in detail several of these "chats," but the content is necessary to some of the conclusions we reach in our discussion below.

> Duran:     I showed [Jane Doe] how to masturbate hon
>
> * * *
>
> Pavulak:   does she try to do it
>
> Pavulak:   if u play with her pussy a lot then by the time i get there she will want me to play with her
>
> Duran:     i caught her many times hon always playing with her pussy
>
> Pavulak:   i wish she would just spread her

message folder.

10

legs and let me lick her

Duran: sometimes when I catch her playing her pussy, I spank her

Pavulak: why

Pavulak: u should encourage her

Duran: shes so young playing with it

Pavulak: n o she is not

Duran: I think 5 will be better

Duran: 5 years old

Pavulak: she plays with it because it feels good to her

Pavulak: [t]here is no age

Pavulak: on when

Duran: her pussy now is very red

Pavulak: look up on the computer "young children masturbation"

Pavulak: and u will find articcles about it

Duran: ok i will look up in the computer tomorrow hon

11

When Pavulak expressed "hope" that he could see Jane Doe use a vibrator, Duran assured him that he would. Pavulak also hoped to engage in sexual activity with Jane Doe:

Pavulak: u think i can finger fuck her at age 5

Duran: well..just try hon

Duran: just use ur small finger hon

Duran: i think it will be fit to her pussy

Pavulak: hope she likes to suck cock hon

Duran: at age 8 she will know if ur cock taste good or not

* * *

Pavulak: im going to shoooot cum in her mouth at age three when i come back there

Duran: hehehehe

Pavulak: u just tell her to suck it out of me hon

* * *

Pavulak: u just keep showing her the movie how u suck me

Pavulak:    so she will know

He continued to insist that Duran show the training video to Jane Doe and "tell [Jane Doe] that it feels so good to" perform oral sex. Pavulak then tried to get Duran to display her and Jane Doe's vaginas via the webcam:

Pavulak:    take ur panties off hon and show me ur pussy

Duran:      i only show my pussy to u hon

Pavulak:    well im waiting hon

Duran:      not now hon

Duran:      tuesday

Pavulak:    why

Pavulak:    hehe

Pavulak:    no now

Duran:      i try

Pavulak:    and [Jane Doe's] too

* * *

Pavulak:    nice thanks

Pavulak:    cum for me

13

| | |
|---|---|
| Pavulak: | hehe |
| Pavulak: | now [Jane Doe's] |
| Duran: | hehee |
| Duran: | diapers on |
| Pavulak: | oh |
| Duran: | u cant see [Jane Doe's] pussy |
| Pavulak: | well maybe sometime soon |
| Duran: | yup |
| Duran: | morning u can see her naked hon |
| Pavulak: | ok |

The Delaware State Police recovered these chat logs between Pavulak and Duran from the laptop computer. In addition, the police discovered that twenty-nine of the child pornography images and forty-two images of Pavulak and Duran were accessed and edited using Windows Photo Gallery between September 13, 2007, and November 22, 2008.

### B. *Procedural Background*

With the discovery of those chat logs in addition to the child-pornography images, the United States took

over Pavulak's prosecution. In April 2009, the United States indicted Pavulak on five counts in the United States District Court for the District of Delaware: (1) failing to update his registration as a sex offender in violation of 18 U.S.C. § 2250(a); (2) possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B); (3) attempting to produce child pornography in violation of 18 U.S.C. § 2251(a) and (e); (4) attempting to coerce and entice a minor in violation of 18 U.S.C. § 2422(b); and (5) committing a felony offense involving a minor while registered as a sex offender in violation of 18 U.S.C. § 2260A.

Before trial, Pavulak moved to suppress the evidence seized from the CTI office and his Yahoo! account. He made two arguments: first, that the search warrants were not based on probable cause because they did not provide the magistrate[7] with any details about what the alleged child-pornography images depicted, and second, that he was entitled to a hearing under *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978), to challenge the veracity of several facts alleged in the probable-cause affidavit. The District Court denied his motion. The Court concluded that there was probable cause, and even

---

[7] We use the term "magistrate" generally, referring to any member of the state or federal judiciary authorized to issue warrants (though in this case, a state issuing authority).

15

if there were not, the officers reasonably relied on the warrants in good faith. The Court also denied Pavulak's request for a *Franks* hearing after determining that Pavulak did not make a substantial preliminary showing that any misstatements or omissions affected the probable-cause analysis.

Pavulak proceeded to trial in September 2010. After a six-day trial, the jury found him guilty on all counts. In January 2011, Pavulak moved for a judgment of acquittal on all counts under Federal Rule of Criminal Procedure 29 based on insufficient evidence. In addition, Pavulak argued that Mack's and Riggs's trial testimony was inconsistent with the information they provided for the search-warrant affidavit. And this inconsistency, according to Pavulak, justified a post-trial *Franks* hearing to challenge the veracity of Mack's and Riggs's tips in the affidavit, leaving the search warrants without probable cause and ultimately entitling Pavulak to a new trial under Rule 33. The District Court denied these motions.

Pavulak's pre-sentence report (PSR) gave rise to several objections. As to Pavulak's attempted-production conviction, the Probation Office advised that his prior Delaware convictions subjected him to mandatory life imprisonment under 18 U.S.C. § 3559(e) as a repeat sex offender. Pavulak objected to this recommendation, arguing that his maximum statutory sentence was fifty years and that *Apprendi v. New Jersey*, 530 U.S. 466, 490

16

(2000), thus required a jury to determine whether his prior Delaware convictions could justify any increase beyond that fifty-year maximum. The District Court rejected that argument. Because Pavulak's maximum sentence was life imprisonment, the Court reasoned that *Apprendi* did not apply. Consequently, the District Court found that Pavulak's prior convictions triggered mandatory life imprisonment under § 3559(e) for his attempted-production conviction and sentenced him accordingly. As to his other counts, the District Court sentenced Pavulak to a consecutive term of 120 months' imprisonment for committing a felony offense involving a minor while registered as a sex offender and 120 months' imprisonment for the remaining counts to run concurrently with each other and the attempted-production count.

Pavulak timely appealed both his convictions and life sentence.[8]

## II.

According to Pavulak, the affidavit submitted in support of the search-warrant applications did not establish probable cause because it lacked any details about what the alleged images of child pornography

---

[8] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction over Pavulak's appeal under 28 U.S.C. § 1291.

17

depicted. On appeal from the denial of a motion to suppress, we review a district court's factual findings for clear error, and we exercise *de novo* review over its application of the law to those factual findings. *United States v. Coles*, 437 F.3d 361, 365 (3d Cir. 2006). Here, we cannot say that the affidavit provided a "'substantial basis' for the magistrate's conclusion that there was a 'fair probability'" of evidence of child pornography in the CTI office and Pavulak's Yahoo! account at the time of the search. *United States v. Vosburgh*, 602 F.3d 512, 526 (3d Cir. 2010) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). But suppression is ultimately inappropriate because the officers relied on the warrants in good faith.

When faced with a warrant application to search for child pornography, a magistrate must be able to independently evaluate whether the contents of the alleged images meet the legal definition of child pornography. *New York v. P.J. Video*, 475 U.S. 868, 874 n.5 (1986). That can be accomplished in one of three ways: (1) the magistrate can personally view the images; (2) the search-warrant affidavit can provide a "sufficiently detailed description" of the images; or (3) the search-warrant application can provide some other facts that tie the images' contents to child pornography. *United States v. Miknevich*, 638 F.3d 178, 183 (3d Cir. 2011); *see also Vosburgh*, 602 F.3d at 527 (holding that probable cause supported a warrant where the affidavit

18

tied the images of child pornography to the defendant using his IP address, a "fairly unique identifier[]").

In this case, the search-warrant applications alleged that Pavulak was "dealing in child pornography" in violation of 11 Del. Code § 1109. That statute prohibits transmitting, receiving, and possessing depictions of "a child engaging in a prohibited sexual act or the simulation of such an act." 11 Del. Code § 1109. A "prohibited sexual act" includes a wide range of sexual activity, including "nudity . . . depicted for the purpose of sexual gratification of any individual" who may view the depiction as well as "lascivious exhibition of the genitals or pubic area of any child." *Id.* § 1103(e).

To show that evidence of Pavulak's dealing in child pornography existed at the CTI office and in his Yahoo! account, the affidavit relied on three pieces of information. First, Pavulak had two prior convictions for child molestation. Second, the affidavit stated that Mack and Riggs had seen Pavulak "viewing child pornography" of females between twelve and eighteen years old, though the affidavit did not provide any further details about what the images depicted. Third, officers were able to corroborate Pavulak's ownership of the Yahoo! email account, his trip to the Philippines, and his presence at the CTI office.

Despite our "great deference" to the magistrate's determination, *Gates*, 462 U.S. at 236, these pieces of

19

information do not establish probable cause to believe that the images contained child pornography. The label "child pornography," without more, does not present any facts from which the magistrate could discern a "fair probability" that what is depicted in the images meets the statutory definition of child pornography and complies with constitutional limits. The affidavit does not describe, for instance, whether the minors depicted in the images were nude or clothed or whether they were engaged in any "prohibited sexual act" as defined by Delaware law. As we said in *Miknevich*, that kind of "insufficiently detailed or conclusory description" of the images is not enough. 638 F.3d at 183. Presented with just the label "child pornography," the most the magistrate could infer was that *the affiant* concluded that the images constitute child pornography.

The problem with that inference is that identifying images as child pornography "will almost always involve, to some degree, a subjective and conclusory determination on the part of the viewer," and such "inherent subjectivity is precisely why the determination should be made by a judge," not the affiant. *United States v. Brunette*, 256 F.3d 14, 18 (1st Cir. 2001). Otherwise, "we might indeed transform the [magistrate] into little more than the cliché 'rubber stamp.'" *Doe v. Goody*, 361 F.3d 232, 243 (3d Cir. 2004). Other circuits agree that a probable-cause affidavit must contain more than the affiant's belief that an image qualifies as child

20

pornography. *United States v. Doyle*, 650 F.3d 460, 474 (4th Cir. 2011) (holding that there was no probable cause where the affidavit did not provide "anything more than a description of the photographs as depicting "nude children""); *Brunette*, 256 F.3d at 18 (holding that there was no probable cause where an affidavit involved an affiant's "legal conclusion parroting the statutory definition" of child pornography "absent any descriptive support and without an independent review of the images" by a magistrate).

The government cites several cases for the proposition that the label "child pornography," by itself, is sufficient. All but one of those cases, however, fall far short of supporting the government's argument. Although the affidavits in *Miknevich* and *Vosburgh* did not describe the contents of the images, the circumstances of those cases required no such description. In *Miknevich*, the affidavit identified the contents of the computer file as child pornography through a sexually explicit and highly descriptive file name referring to the ages of the children and implying that they were masturbating. 638 F.3d at 184. The file's "digital fingerprint" also marked it as one known to contain child pornography. *Id.* at 185. We upheld that warrant, reasoning that the file name was "explicit and detailed enough so as to permit a reasonable inference of what the file is likely to depict." *Id.* No such indication is present in this case.

21

*Vosburgh* involved a defendant who tried to download a link to a video described on the website as depicting a four-year-old performing oral sex—a video that contained only gibberish because it had been planted by law enforcement. 602 F.3d at 517. The officer tracked the download attempt to the defendant's computer and obtained a warrant to search for child pornography. *Id.* We upheld that warrant because the defendant's deliberate attempt to download child pornography established a fair probability that he possessed other images of child pornography. *Id.* The probable-cause determination there, unlike this case, was not based on the affiant's knowledge that the defendant possessed child pornography, so there were no illicit depictions to describe in the affidavit. *Id.* So, too, in *United States v. Simpson*, 152 F.3d 1241 (10th Cir. 1998). There, the affidavit described the defendant's agreement to "send a computer diskette with numerous scenes of prepubescent children under the age of thirteen" to an undercover officer "in exchange for a videotape containing scenes of child pornography." *Id.* at 1246–47. Finally, the government's reliance on *United States v. Grosenheider*, 200 F.3d 321 (5th Cir. 2000), and *United States v. Budd*, 549 F.3d 1140 (7th Cir. 2008), is unhelpful. Those cases do not specify what information was presented in the affidavits.

That leaves the government's position dependent entirely on *United States v. Grant*, 490 F.3d 627 (8th Cir.

22

2007). In *Grant*, the Eighth Circuit upheld a warrant to search for child pornography based on an officer's conclusion that images observed by an informant met the statutory definition of child pornography. *Id.* at 630, 632. We decline to adopt the Eighth Circuit's approach. Magistrates—not affiants or officers—bear the responsibility of determining whether there exists a fair probability that the sought-after images meet the statutory and constitutional definitions of child pornography. *Cf. P.J. Video*, 475 U.S. at 876–77 (reviewing the search-warrant affidavit to ensure that the magistrate "was given more than enough information to conclude that there was a fair probability *that the movies satisfied the first and third elements of the statutory definition*" of obscenity (emphasis added)). In any event, we believe the Supreme Court's decision in *P.J. Video*, together with our own precedent in *Vosburgh* and *Miknevich*, compel us to require more than a conclusion by an affiant that the sought-after images constitute child pornography.

Nor does combining the label "child pornography" with the rest of the information in the affidavit produce something greater than the sum of its parts. Pavulak's prior child-molestation convictions are "not sufficient to establish—or even to hint at—probable cause as to the wholly separate crime of possessing child pornography" absent any allegation of a correlation between the two types of crimes. *Virgin Islands v. John*, 654 F.3d 412,

419 (3d Cir. 2011). That correlation between the two crimes is the missing linchpin that differentiates this case from the Eighth Circuit's decision in *United States v. Colbert*, 605 F.3d 573, 577–78 (8th Cir. 2010). There, the defendant was "pushing a five-year-old girl (whom he did not know) on a playground swingset while talking to her 'about movies' and videos the man had at his home.'" *John*, 654 F.3d at 422 (describing *Colbert*, 605 F.3d at 575). Based on that information, officers obtained a warrant to search his home for child pornography. *Colbert*, 605 F.3d at 575–76. The Eighth Circuit upheld the warrant, concluding that the combination of the defendant's "specific desire to watch movies at home with an unrelated five-year-old girl" and his "contemporaneous attempt to entice" her established probable cause to believe those movies contained child pornography. *Id.* By contrast, Detective Skubik's affidavit did not link Pavulak's prior acts of child molestation to the sought-after images. *See John*, 654 F.3d at 422 (distinguishing *Colbert* on this basis). His criminal history thus does not provide any additional reason to believe that these specific images met the legal definition of child pornography under Delaware law.

Likewise, the successful corroboration of certain details about Pavulak's other activities does not save the warrants. To be sure, a "'tip conveying a contemporaneous observation of criminal activity whose innocent details are corroborated'" can establish probable

cause of that criminal activity. *United States v. Torres*, 534 F.3d 207, 211 (3d Cir. 2008) (quoting *United States v. Wheat*, 278 F.3d 722, 735 (8th Cir. 2001)). But the details corroborated in this case—Pavulak's email account, his trip to the Philippines, and residence and employment at the CTI office—did not increase the likelihood that the sought-after images contained lascivious depictions of nude minors or minors engaging in sexual acts prohibited by Delaware law. As a result, the label "child pornography"—without any details about what the images depict or any other connection to child pornography—is beyond the outer limits of probable-cause territory.

Even though the warrants in this case transgressed that boundary, the evidence should not be suppressed because the officers relied on the warrant in good faith. Suppression is not justified when officers act in the "reasonable belief that their conduct d[oes] not violate the Fourth Amendment." *United States v. Leon*, 468 U.S. 897, 918 (1984). "Ordinarily, the 'mere existence of a warrant . . . suffices to prove that an officer conducted a search in good faith.'" *United States v. Stearn*, 597 F.3d 540, 561 (3d Cir. 2010) (quoting *United States v. Hodge*, 246 F.3d 301, 307–08 (3d Cir. 2001)). Yet there are situations "in which, although a neutral magistrate has found probable cause to search, a lay officer executing the warrant could not reasonably believe that the magistrate was correct." *Id.* Those four "rare

25

circumstances" occur when:

> (1) the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit;
>
> (2) the magistrate abandoned his judicial role and failed to perform his neutral and detached function;
>
> (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
>
> (4) the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Id.* at 561 & n.19 (internal quotation marks and citations omitted). Here, Pavulak invokes only the third exception—that the affidavit was "so lacking in indicia of probable cause as to render" the executing officers' belief unreasonable.[9]

---

[9] To the extent Pavulak intends to invoke the first exception to good faith—that the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit—by arguing that he was entitled to a *Franks*

26

The "threshold for establishing this exception is a high one," *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012), and Pavulak has not overcome that burden here. The affidavit in this case is not a "bare bones" affidavit. It does not rely on an officer's unsupported belief that probable cause exists. *See United States v. Ritter*, 416 F.3d 256, 263 (3d Cir. 2005); *see also Gates*, 462 U.S. at 239 (identifying the affidavits in *Nathanson v. United States*, 290 U.S. 41 (1933), and *Aguilar v. Texas*, 378 U.S. 108 (1964), as "bare bones" affidavits because each contained only an officer's belief that probable cause existed without providing any factual details). It does not rely on a single piece of stale evidence. *See United States v. Zimmerman*, 277 F.3d 426, 437 (3d Cir. 2002). And it does not rely on an uncorroborated or unreliable anonymous tip. *See United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993).

Rather, the affiant (also one of the executing officers) knew that the affidavit had been prepared using first-hand information from Mack, a fellow employee who provided reliable and current knowledge of Pavulak's activities at the CTI office—information that was confirmed by another employee, Riggs. The affiant also knew that some of the information Mack and Riggs provided had been corroborated and that this information

---

hearing, we reject that argument for the reasons set forth in Parts III and VI.

had been circulated in a police memorandum and reviewed before the warrants were sought. In short, the officers reasonably relied on the warrant even though the supporting affidavit did not contain details about the content of the images.

And their reliance on the warrant despite the lack of those details is defensible in light of "the state of Circuit law at the time." *Hodge*, 246 F.3d at 309. The warrants were sought and issued in 2009, but the cases leading us to conclude that the affidavit was insufficient—*Vosburgh*, *John*, and *Miknevich*—were not decided until 2010 and 2011. In fact, the affidavit's allegations would have been sufficient in the Eighth Circuit at the time. *See Grant*, 490 F.3d at 630, 632 (upholding a search warrant based on an officer's conclusion that a witness's description of the images met the definition of child pornography under the state statute).

Pavulak counters that the good-faith exception is inapplicable because the affiant, Detective Skubik, was also involved in executing the search. That is not the law. To be sure, we have acknowledged that it is "somewhat disingenuous" to find good faith based on a "paltry showing" of probable cause, "particularly where the affiant is also one of the executing officers." *Zimmerman*, 277 F.3d at 438. Similarly, the Supreme Court has observed that an officer who both prepared the search-warrant application and carried out the search was

28

familiar enough with the warrant to have noticed its deficiency upon "even a cursory reading" or "just a simple glance." *Groh v. Ramirez*, 540 U.S. 551, 564 (2004). Those observations, however, simply reinforce the longstanding rule that "paltry" affidavits preclude good faith. Neither the Supreme Court nor this court has created a new exception to good faith based entirely on the identity of the executing officer, and Pavulak fails to cite any court that has interpreted the Supreme Court's observation in *Groh* so broadly. The officers reasonably relied on the warrants in good faith and the District Court correctly denied Pavulak's motion to suppress.

## III.

Pavulak also claims that the District Court erred by denying his request for a pre-trial *Franks* hearing. The Fourth Amendment prohibits the intentional or reckless inclusion of a material false statement (or omission of material information) in a search-warrant affidavit. *United States v. Yusuf*, 461 F.3d 374, 383–84 (3d Cir. 2006). In *Franks*, the Supreme Court held that a defendant may be entitled to challenge the truthfulness of facts alleged in support of a search-warrant application. *Franks*, 438 U.S. at 164–65. The right to a *Franks* hearing is not absolute, however. The defendant must first (1) make a "substantial preliminary showing" that the affiant knowingly or recklessly included a false statement in or omitted facts from the affidavit, and (2) demonstrate that the false statement or omitted facts are

29

"necessary to the finding of probable cause." *Yusuf*, 461 F.3d at 383–84.

We have not yet identified the standard of review for a district court's denial of a request for a *Franks* hearing, and our sister circuits are divided on the correct approach.[10]  *See United States v. Falso*, 544 F.3d 110,

[10] The Fourth, Fifth, and Ninth Circuits employ a mixed standard, reviewing legal determinations *de novo* and any supporting factual findings for clear error.  *See United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011); *United States v. Martin*, 332 F.3d 827, 833 (5th Cir. 2003); *United States v. Chavez-Miranda*, 306 F.3d 973, 979 (9th Cir. 2002).  By contrast, the First, Sixth, and Seventh Circuits review a district court's decision for clear error, though it is unclear to what extent that clear-error review maps onto the Fourth, Fifth, and Ninth Circuits' mixed standard.  *See United States v. Smith*, 576 F.3d 762, 764 (7th Cir. 2009); *United States v. Reiner*, 500 F.3d 10, 14 (1st Cir. 2007); *United States v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002).  The Second Circuit has apparently sided with mixed review, though then-Judge Sotomayor questioned the validity of that choice.  *Compare United States v. Cahill*, 355 F. App'x 563, 565 (2d Cir. 2009) (reviewing factual findings supporting the denial of a *Franks* hearing for clear error), *and United States v. One Parcel of Property Located at 15 Black Ledge*, 897 F.2d 97, 100 (2d Cir. 1990) (same), *with United States v.*

126 n.21 (2d Cir. 2008) (recognizing split); *United States v. Becton*, 601 F.3d 588, 594 (D.C. Cir. 2010) (citing *United States v. Dale*, 991 F.2d 819, 843–44 n.44 (D.C. Cir. 1993) (per curiam)) (same). We conclude that this case does not require us to enter the fray. Even under *de novo* review, none of the alleged errors identified by Pavulak would have changed the probable-cause determination.

Pavulak first says the affidavit omitted crucial information: although indicating that his prior Delaware convictions occurred in 1998 and 2005, the affidavit did

---

*Falso*, 544 F.3d 110, 126 n.21 (2d Cir. 2008) (Sotomayor, J.) (questioning the propriety of clear-error review and noting that the Second Circuit has not "explain[ed] why that was the appropriate standard"). Meanwhile, the Eighth Circuit has carved its own path, reviewing the district court's decision for abuse of discretion. *See United States v. Kattaria*, 553 F.3d 1171, 1177 (8th Cir. 2009) (en banc) (per curiam). The Eleventh Circuit and D.C. Circuit have not yet decided what standard to use. *See United States v. Becton*, 601 F.3d 588, 594 (D.C. Cir. 2010) (bypassing the need to adopt a standard); *United States v. Sarras*, 575 F.3d 1191, 1219 n.37 (11th Cir. 2009) (same, though noting that a district court's decision to deny an evidentiary hearing on a motion to suppress is normally reviewed for abuse of discretion).

31

not explain that the conduct underlying both of those convictions occurred between 1997 and 1999. This half-truth, Pavulak says, was "calculated to portray [him] as a persistent threat" even though "at the time of the affidavit[,] he had not committed an offense for roughly 10 years." Appellant's Br. at 50. Yet when we add this counterfactual information to the affidavit, it does not change our probable-cause determination. *Yusuf*, 461 F.3d at 388 n.12 ("The omitted information is introduced into the affidavit in order to determine whether the omission was material."). As we concluded earlier, Pavulak's prior convictions of child molestation did not establish probable cause for the "wholly separate crime of possessing child pornography." *John*, 654 F.3d at 419; *see supra* Part II. Given that the convictions themselves do not change either the reasonableness or probable-cause determinations, when his underlying conduct occurred is similarly irrelevant. Consequently, Pavulak has failed to show that "there would have been no probable cause but for" the omission of when his prior conduct occurred. *See United States v. Frost*, 999 F.2d 737, 743 (3d Cir. 1993).

The false statements Pavulak identifies are no more availing. He challenges paragraph 4 of the affidavit, which stated that Pavulak was viewing child pornography in October 2008 in CTI's office "located at 270 Quigley Blvd, New Castle DE 19720." According to Pavulak, CTI's office was in Newport, Delaware, at that

time and did not relocate to New Castle until later that month. *See* Appellant's Br. at 51. That mistake, though, does not undermine the existence of probable cause.[11] The import of that information was that Pavulak was viewing child pornography in CTI's only office— wherever it was located—using CTI's computers and using his online Yahoo! account. *See, e.g.*, *United States v. Corral-Corral*, 899 F.2d 927, 934 (10th Cir. 1990) (holding that inclusion of an "innocent error" about the defendant's address in the affidavit was insufficient to satisfy the defendant's burden under *Franks*). This alleged misstatement did not meet Pavulak's burden.

Finally, the officers' internal memorandum stated that Pavulak "molested the daughter of his Russian wife"—a statement Pavulak claims is false because his Russian wife did not have a daughter. *See* Appellant's Br. at 52. Using this statement to challenge the search warrant, however, turns *Franks* on its head. The internal memorandum was not submitted in support of the search-warrant application, and this statement about a daughter of his Russian wife was not mentioned in the probable-cause affidavit. *See* Oral Arg. Tr. at 8, 38. If *Franks* means anything, it means that the Fourth Amendment is not violated when officers choose to omit information of questionable veracity from their search-warrant

---

[11] Pavulak does not argue that the warrant authorized or resulted in a search of the wrong location.

applications. That is precisely what *Franks* encourages and exactly what the officers did here. In sum, Pavulak was not entitled to a pre-trial *Franks* hearing.

## IV.

Pavulak further claims that the prosecutor's closing argument denied him due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). To determine if that is true, we must "weigh the prosecutor's conduct, the effect of the curative instructions and the strength of the evidence." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001) (citing *Darden v. Wainwright*, 477 U.S. 168, 182 (1986)). Where, as here, the defendant did not object to the alleged misconduct, we review the prosecutor's statements for plain error. *United States v. Lee*, 612 F.3d 170, 193 (3d Cir. 2010).

Although Pavulak complains that three of the prosecutor's statements infected his trial, we detect no fatal infirmity. First, Pavulak claims that the prosecutor improperly relied on his four-day trip to Las Vegas as the basis for the failure-to-update charge. That argument mischaracterizes the record. To prove that Pavulak violated the Sex Offender Registration and Notification Act ("SORNA") by failing to update his registration, the prosecutor had to show that Pavulak (1) was a sex offender required to register under SORNA who (2) traveled in interstate or foreign commerce after SORNA's enactment and (3) knowingly failed to update

34

his sex-offender registration as required by SORNA. *See United States v. Pendleton*, 636 F.3d 78, 83 (3d Cir. 2011) (citing 18 U.S.C. § 2250(a)). After pointing out Pavulak's status as a sex offender (the first element), the prosecutor relied on Pavulak's trips to Las Vegas and the Philippines to satisfy the jurisdictional requirement (the second element). The prosecutor then turned to the third element, relying on Pavulak's failure to update his registration while living in and employed at the CTI office. *See* JA616a ("Now, the problem for the defendant is that he never registered that address, *that CTI address*, as either a place of employment or a place that he was living." (emphasis added)); *see* JA615a–31a (arguing that Pavulak was living and working at the CTI office). The prosecutor thus argued that Pavulak's time at the CTI office, not his Las Vegas trip, required him to update his SORNA registration.

Second, the prosecutor's momentary focus on the "big picture" did not improperly invite the jury to cumulate the evidence of the separate charges. The prosecutor began his closing argument by telling the jury that Pavulak had been charged with "four different crimes" and then discussed the law and evidence for each count separately. *See* JA612a, 614a (inviting the jury to "walk through the charges and the evidence that proves the defendant guilty of each of them"); *see id.* (discussing Count 1); SA300 (discussing Count 4), 321 (discussing Count 3), 325–26 (discussing Count 2). As he was

35

wrapping up, the prosecutor made the following comment:

> The other thing you see in the presentation from the defense is a divide and conquer strategy. They take four different crimes and they want to separate them and they want you to look at each one with blinders on. They don't want you to look at the big picture, because the big picture, folks, is really ugly for Mr. Pavulak. Same [modus operandi].

Although this comment is where Pavulak places the weight of his improper-cumulation argument, this comment cannot shoulder that load. Such a single, ambiguous remark—ameliorated by our presumption that the jury followed its instruction to consider the evidence for each charge separately, *see United States v. Edmonds*, 80 F.3d 810, 825 (3d Cir. 1996), and the overwhelming evidence against Pavulak on each count—cannot constitute plain error. *United States v. Riley*, 621 F.3d 312, 339 (3d Cir. 2010) ("The type of counsel misconduct that warrants granting a new trial is not generally a single isolated inappropriate comment, but rather repeated conduct that 'permeate[s]' the trial." (citation omitted)); *see also United States v. Brown*, 254 F.3d 454, 465 (3d Cir. 2001) ("[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury,

sitting through a lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." (citation omitted)).

Third, the prosecutor's discussion of the harm caused by production of child pornography was unobjectionable. The prosecutor stated:

> As the thousands of images of child pornography on defendant's computers prove, physical and digital images can live on indefinitely. And think about the story behind each of those pictures.

> The day before he was arrested, the defendant tried to have [Duran] put [Jane Doe] on the Webcam, exposing her vagina. He could have [recorded] that image, Detective Willey told us. If so, we'd have yet another image of child pornography, another file that memorializes the actual sexual abuse of a real child, and the story in this case, the story that you heard last week, would lie behind that image forever, because each image memorializes the sexual exploitation of an actual child. That's why Congress has banned any person from producing, distributing, receiving, or possessing an image of child pornography.

37

These statements parallel Congress's reasons for criminalizing the production and attempted production of child pornography. *See* 18 U.S.C. § 2251. Besides, this explanation preempted Pavulak's argument that Jane Doe's brief nudity on a webcam would not have meaningfully harmed her. *See* R. 84 at 80; Appellant's Br. at 46 (calling Pavulak's actions "minor, to the point of approaching triviality"). In short, none of the prosecutor's remarks constitute plain error.

V.

Pavulak also challenges whether the District Court erred by denying his motion for judgment of acquittal based on the sufficiency of the evidence supporting his attempted-production and possession convictions.[12] We review a sufficiency-of-the-evidence claim *de novo*. *United States v. Flores*, 454 F.3d 149, 154 (3d Cir. 2006) (citing *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)). In doing so, we "'examine the totality of the evidence, both direct and circumstantial,' and 'interpret the evidence in the light most favorable to the government as the verdict winner.'" *United States v. Starnes*, 583 F.3d 196, 206 (3d Cir. 2009) (quoting *United States v. Miller*, 527 F.3d 54, 60, 62 (3d Cir. 2008)). If "all the pieces of evidence, taken together, make a strong enough case to let a jury find [the

---

[12] On appeal, Pavulak does not challenge the sufficiency of the evidence supporting his remaining convictions.

defendant] guilty beyond a reasonable doubt, then we must uphold the jury's verdict." *Brodie*, 403 F.2d at 134 (quoting *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987)).

Here, Pavulak's challenge to his conviction for knowingly possessing child pornography falls short of its "extremely high" burden. *Starnes*, 583 F.3d at 206 (quoting *United States v. Iglesias*, 535 F.3d 150, 155 (3d Cir. 2008)). To prove possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B), the evidence must show that Pavulak "knowingly possesse[d], or knowingly accesse[d] with an intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography" with the requisite connection to interstate commerce. Pavulak concedes that the images recovered from the laptop[13] depict child pornography. But he argues that no rational jury could have found beyond a reasonable doubt that he knowingly possessed those images. *See* Appellant's Br. at 33–37.

The jury, though, had ample evidence to infer otherwise. The laptop had only a single password-protected Windows user account and contained photos of

---

[13] Because the jury's verdict can be sustained based on the evidence relating to the laptop, we do not address whether the evidence relating to the desktop computer withstands Pavulak's sufficiency challenge.

Pavulak, Pavulak claimed that the laptop was his computer, and the police recovered the laptop from the part of the CTI office in which he was living. Simply put, Pavulak was the laptop's likeliest user.

And Pavulak was also the likeliest person to have accessed the child-pornography images on the laptop. They were not buried away where an innocent user could have overlooked them. Twenty-nine of them were found in Windows Photo Gallery, which could have occurred only if the user had accessed the image and modified it in some way. And the laptop's user edited the twenty-nine images between September and November 2008, usually in the evening and on the weekends—when Pavulak had access to the laptop and other CTI employees did not. Indeed, on two occasions, several of the child-pornography images and pictures of Pavulak were edited within hours of each other. *Compare* Gov't Exs. 246–50, 253–54 (depicting images of Pavulak created on September 13, 2008 at approximately 3:30 p.m.), *with* Gov't Exs. 225–225A (depicting an image of child pornography created on September 13, 2008 at approximately 11:30 p.m.); *compare* Gov't Ex. 251 (depicting an image of Pavulak created on November 4, 2008 at approximately 5:20 p.m.), *with* Gov't Exs. 211–211A, 215–216A, 219–220A, 228–228A, 231–231A (depicting images of child pornography created on November 4, 2008 at approximately 10:40 p.m.). By contrast, no one accessed these twenty-nine images of

child pornography when Pavulak left the laptop in the United States during his trip to the Philippines. The weight of this evidence prevents us from overturning Pavulak's conviction for possessing child pornography.

Likewise, we cannot say that "'no reasonable juror could accept the evidence as sufficient'" to find Pavulak guilty of attempting to produce child pornography. *Miller*, 527 F.3d at 69 (quoting *United States v. Lacy*, 446 F.3d 448, 451 (3d Cir. 2006)). The crime of attempt requires the specific intent to commit a crime—here, producing child pornography in violation of 18 U.S.C. § 2251(a)—and a substantial step towards the commission of that crime. *Cf. United States v. Nestor*, 574 F.3d 159, 160–61 (3d Cir. 2009) (describing attempted enticement of a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b)). Under § 2251(a), a person is guilty of producing child pornography if he "employs, uses, persuades, induces, entices, or coerces any minor to engage in" or "has a minor assist any other person to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct."

Here, Pavulak repeatedly insisted that Duran display Jane Doe's vagina via a live webcam feed during their January 18, 2009 chat session. *See* JA530a–31a (telling Duran to "take ur panties off hon and show me ur pussy," stating "no now . . . *and [Jane Doe's] too*" when

41

Duran initially declined, and again demanding "*now [Jane Doe's]*" after Duran gave in to his request to see her vagina (emphasis added)).  Duran declined to expose Jane Doe's vagina because she was wearing a diaper but offered to display Jane Doe naked the next morning. Pavulak agreed, typing "ok."  That evidence was enough to constitute a substantial step towards "coercing" Jane Doe to "engage in any sexually explicit conduct . . . for the purpose of transmitting a live visual depiction of such conduct."  18 U.S.C. § 2251(a); *see, e.g.*, *United States v. Lee*, 603 F.3d 904, 918 (11th Cir. 2010) (upholding a guilty verdict for attempted production of child pornography where the evidence showed that the defendant "repeatedly . . . request[ed] sexually explicit photographs and [sent] a photograph of his own").

Moreover, there was plenty of evidence that Pavulak specifically intended for Duran to display Jane Doe's vagina "to excite lustfulness or sexual stimulation." *See United States v. Knox*, 32 F.3d 733, 745 (3d Cir. 1994) (explaining that "lascivious exhibition of genitals or pubic area" is "one variety of 'sexually explicit conduct' proscribed by the statute").  During that chat, Pavulak described various ways that he intended to sexually abuse Jane Doe in the future, including:

- Digitally penetrating her at age five;

- Hoping that she likes performing oral sex on him;

42

- Wanting to see her use a vibrator;

- Ejaculating in her mouth during his next trip to the Philippines; and

- Wanting Duran to continue instructing Jane Doe on how to perform oral sex.

Pavulak's text messages and the "training video" confirm his desires. His own text messages to Duran indicate that Pavulak wanted to perform oral sex on Jane Doe, to see both Duran and Jane Doe "naked on the cam using the v[i]brator," to have Jane Doe perform oral sex on him, and to have Duran "make it all work out for the three of [them] to be [sic] happy sex life." And Pavulak created a "training video" for Jane Doe to learn how to perform oral sex.

Urging us to characterize his chat with Duran as facetious "banter," Pavulak claims that he lacked the specific intent "to act on any of the illicit portions of his fantasies." Appellant's Br. at 30. Yet "'it is not for us to weigh the evidence.'" *United States v. Smith*, 294 F.3d 473, 478 (3d Cir. 2002) (quoting *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998)). And even if that were one plausible interpretation of the evidence, his "'contention that the evidence also permits a less sinister conclusion'" than guilt is not enough to overturn the verdict. *Id.* (quoting *Dent*, 149 F.3d at 188). Pavulak fails to take the next step and explain why the

government's ample evidence does not support the jury's verdict. The jury therefore had sufficient evidence to find that Pavulak specifically intended to produce child pornography by directing Duran to expose Jane Doe on the webcam. As a result, Pavulak's sufficiency challenges fail.

VI.

The District Court did not err by denying Pavulak's motion for a new trial. According to Pavulak, Mack testified at trial that he saw Pavulak viewing adult pornography, contradicting the search-warrant affidavit's indication that he saw Pavulak viewing child pornography. This inconsistency, Pavulak contends, entitled him to a post-trial *Franks* hearing so he could show that the affidavit's information was false. In turn, that falsity would justify suppression of the chat logs, photographs, and other evidence recovered from the CTI office and his Yahoo! account and ultimately entitle him to a new trial under Federal Rule of Criminal Procedure 33.

We normally review the denial of a Rule 33 motion for a new trial for abuse of discretion. *See United States v. Brown*, 595 F.3d 498, 511 (3d Cir. 2010) (citing *United States v. Saada*, 212 F.3d 210, 215 (3d Cir. 2000). Because Pavulak predicates his motion for a new trial on his entitlement to a *Franks* hearing, we will directly evaluate the denial of his request for a post-trial *Franks*

44

hearing. *Accord United States v. Rivera*, 410 F.3d 998, 1000–01 (8th Cir. 2005) (taking this approach). He was entitled to such a hearing only if he (1) made a "substantial preliminary showing" that the affiant knowingly or recklessly included a false statement in or omitted facts from the affidavit, and (2) showed that the false statements or omitted facts were "necessary to the finding of probable cause." *Yusuf*, 461 F.3d at 383–84. Like his request for a pre-trial *Franks* hearing, we need not establish a standard of review because Pavulak was not entitled to a post-trial *Franks* hearing under any standard.

Mack's trial testimony was perfectly consistent with the information he provided for the search-warrant affidavit. At trial, Mack testified that pictures of women Pavulak met in the Philippines—*not* the suspected images of child pornography—"looked of age." Indeed, at trial, Mack confirmed that the pornographic images to which he tipped off the police involved "really young" girls in their "early teens." With no inconsistency between Mack's trial testimony and earlier tip, Pavulak cannot make the "substantial preliminary showing" that the information provided in the affidavit was false. And without identifying false information, Pavulak was not entitled to a post-trial *Franks* hearing and, consequently, to a new trial.

45

VII.

In addition to challenging his convictions, Pavulak claims that the Constitution required the jury, not the District Court, to determine the facts that triggered his mandatory life sentence under 18 U.S.C. § 3559(e)(1) on the attempted-production conviction. We exercise *de novo* review over these questions of constitutional and statutory interpretation. *United States v. Barbosa*, 271 F.3d 438, 452 (3d Cir. 2001) (citing *United States v. Williams*, 235 F.3d 858, 861 (3d Cir. 2000)).

First, some background: Section 3559(e)(1) imposes a mandatory life sentence on a defendant "convicted of a Federal sex offense in which a minor is the victim" if he has a "prior sex conviction in which a minor was the victim." The trigger for this section—a "prior sex conviction in which a child was the victim"—includes specified "Federal sex offense[s]" as well as "State sex offense[s]" that would be "punishable by more than one year in prison" and involve "conduct that would be a Federal sex offense" if there were federal jurisdiction. 18 U.S.C. § 3559(e)(2)(A)–(B).

Thus, determining whether § 3559(e)(1)'s mandatory life sentence applies to Pavulak turns on whether his prior Delaware convictions for unlawful sexual contact in the second degree under 11 Del. Code § 768 also constitute a federal sex offense—here, aggravated sexual abuse of a child under 18 U.S.C.

46

§ 2241(c). To make that determination, we must start with the formal categorical approach. That inquiry requires a district judge to evaluate whether the "elements of the statutory state offense," not "the specific facts" underlying the defendant's prior conviction, would automatically constitute a federal sex offense. *Jean-Louis v. Att'y Gen. of U.S.*, 582 F.3d 462, 465 (3d Cir. 2009). Here, the Delaware crime of unlawful sexual contact in the second degree is not necessarily congruous with the federal crime of aggravated sexual abuse of children under 18 U.S.C. § 2241(c). There are at least two differences:

1. Section 2241(c) requires the victim to be less than twelve years old, whereas 11 Del. Code § 768 requires the victim to be less than eighteen years old.

2. Section 2241(c) contains an additional element—a specific-intent requirement that the defendant's "intentional touching" occur "with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person"—that 11 Del. Code. § 768 does not require. *Compare* 18 U.S.C. § 2246(2)(D) (defining "sexual act" to include this specific-intent requirement), *with* 11 Del. Code § 761(f) (defining "sexual act" without any specific-intent requirement).

47

Given these differences, the Delaware law under which Pavulak was previously convicted does not necessarily "involve conduct that would be a Federal sex offense" under the formal categorical approach. *See, e.g.*, *Singh v. Ashcroft*, 383 F.3d 144, 153 (3d Cir. 2004) (reaching the same conclusion in comparing the Delaware crime of unlawful sexual contact in the third degree with the federal crime of sexual abuse of a minor because the federal crime required a victim under twelve years old while the Delaware crime did not contain an age cut-off). Consequently, we cannot conclude, as a matter of law, that Pavulak's prior state convictions necessarily constitute a federal sex offense.

Our inquiry does not end there: the trier of fact might find sufficient facts underlying Pavulak's prior Delaware convictions to satisfy the two additional requirements of the federal crime of aggravated abuse of children. Who—the judge or the jury—is allowed to engage in that fact-finding? Under the familiar *Apprendi* rule, the Fifth Amendment's Due Process Clause and Sixth Amendment's Jury Trial Guarantee require "any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum [to] be submitted to a jury and proved beyond a reasonable doubt." *United States v. Chorin*, 322 F.3d 274, 278 (3d Cir. 2003) (citing *Apprendi*, 530 U.S. at 490).

If *Apprendi* applies, the district judge is usually

limited to the formal categorical approach, and any remaining elements of the federal sentencing enhancement must be found by a jury beyond a reasonable doubt. In some cases (like this one) where the federal sentencing enhancement "invites inquiry into the underlying facts of the case," *Borrome v. Att'y Gen. of U.S.*, 687 F.3d 150, 155 (3d Cir. 2012), we have modified the categorical approach, permitting the district judge to "evaluate whether the factual elements of the analogous federal crime were necessarily proven at the time of the defendant's conviction on the state charges." *United States v. Rood*, 679 F.3d 95, 98 (2d Cir. 2012) (applying the modified categorical approach to 18 U.S.C. § 3559(e)); *see* 18 U.S.C. § 3559(e) (focusing on whether the state sex offense involves "*conduct* that would be a Federal sex offense" and thereby inviting an inquiry into the facts underlying the defendant's conviction (emphasis added)). Under this modified categorical approach, the judge may consider only those facts that were "necessarily admitted" by the defendant in his prior criminal proceeding—that is, facts found in the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005). On the other hand, if *Apprendi* does not apply, then the district judge is free to make any factual findings related to sentencing, just as he is when finding facts that trigger enhancements under the Sentencing Guidelines that would not increase

the defendant's maximum statutory sentence. *See, e.g.*, *United States v. Grier*, 475 F.3d 556, 562 (3d Cir. 2006) (en banc) (holding that *Apprendi* does not limit a district court's ability to engage in judicial fact-finding within the permissible sentencing range so long as that fact-finding would not trigger an increase in the defendant's maximum statutory sentence).

Here, *Apprendi*'s restriction on judicial fact-finding does not apply because the mandatory life sentence in § 3559(e) does not exceed Pavulak's maximum statutory sentence for attempted production of child pornography, which is life imprisonment. For attempted production of child pornography, 18 U.S.C. § 2251(e) establishes three sets of sentencing ranges depending on the defendant's criminal history. A defendant with no qualifying prior convictions faces fifteen to thirty years' imprisonment. 18 U.S.C. § 2251(e). A defendant faces twenty-five to fifty years' imprisonment if he has one prior conviction under certain federal laws or "under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography." *Id.* Lastly, a defendant faces imprisonment between thirty-five years and life if he has two or more prior convictions under certain federal laws "or under the laws of any State relating to the sexual

50

exploitation of children." *Id.*

Although Pavulak concedes that his two prior Delaware convictions subjected him to a sentencing range of twenty-five to fifty years, he contends that they did not "relat[e] to the sexual exploitation of children" and therefore did not subject him to life imprisonment. And because § 3559(e)'s mandatory life imprisonment would exceed his statutory maximum of fifty years under § 2251(e), Pavulak concludes that *Apprendi* required the jury (not the District Court) to determine whether his Delaware convictions triggered the mandatory life sentence in § 3559(e).

Pavulak's premise is faulty. His two prior Delaware convictions did "relat[e] to the sexual exploitation of children," subjecting him to a statutory maximum of life imprisonment under § 2251(e). That conclusion is mandated by our decision in *United States v. Randolph*, 364 F.3d 118, 119 (3d Cir. 2004). There, the defendant had three prior Georgia convictions for child molestation—defined as performing "any immoral or indecent act to or in the presence of or with any child under the age of 14 years with the intent to arouse or satisfy the sexual desires of either the child or the person." *Id.* at 122 (quoting Ga. Code Ann. § 26-2019 (1978)). After being convicted of attempted production of child pornography under a previous version of § 2251, the defendant faced an increased statutory maximum if his prior Georgia convictions involved the "sexual

51

exploitation of children"—the same framework as the current version of § 2251. *See id.* at 119. He argued that this enhancement applied only if the *conduct* underlying his prior convictions "involv[ed] the production of visual depictions of minors engaged in sexually explicit conduct." *Id.* at 122. We rejected that case-by-case analysis and depiction-limited definition. Instead, we adopted a categorical approach focused on whether the statutory definition of the prior crime, rather than the particular defendant's conduct, related to the "sexual exploitation of children." *Id.* And Georgia's law against child molestation, we concluded, related to the "sexual exploitation of children." *Id.*

Likewise, Pavulak's two prior Delaware convictions for unlawful sexual contact in the second degree involved the "sexual exploitation of children." Under Delaware law, "[a] person is guilty of unlawful sexual contact in the second degree when the person intentionally has sexual contact with another person who is less than 16 years of age or causes the victim to have sexual contact with the person or a third person." 11 Del. Code § 768. "Sexual contact" is one type of "sexual exploitation." *See Randolph*, 364 F.3d at 122 (holding that "child molestation" is related to sexual exploitation); *United States v. Galo*, 239 F.3d 572, 583 (3d Cir. 2001) (holding that "sexual exploitation" in § 2251(e) includes "involuntary deviate sexual intercourse" and "statutory rape"); *see id.* (holding that the definition of the prior

52

conviction need not "contain the term 'sexual exploitation of children'" to qualify). And because section 768 requires a victim who is "less than 16 years of age," the statute is limited to "the sexual exploitation *of children*" as required by § 2251(e) (emphasis added).

Pavulak urges us to adopt the same case-by-case approach that we rejected in *Randolph*—a proposal we are powerless to consider. *See Mariana v. Fisher*, 338 F.3d 189, 201 (3d Cir. 2003) ("[T]he holding of a panel in a precedential opinion is binding on subsequent panels." (quoting Third Circuit I.O.P. 9.1)).

And contrary to Pavulak's insistence otherwise, Congress's amendments to § 2251(e) since *Randolph* do not change anything. At the time of *Randolph*, § 2251(e)'s enhanced sentencing ranges were both triggered by prior state convictions "relating to the sexual exploitation of children": twenty-five to fifty years for one such conviction and thirty-five years to life for two such convictions. *See Randolph*, 364 F.3d at 119. In 2006, Congress amended the description of qualifying state offenses that would trigger the twenty-five-to-fifty-year category: it replaced "the sexual exploitation of children" with "aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography." Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No.

53

109-248, § 206(b)(1)(B), 120 Stat. 587, 614 (2006). But Congress did not make any changes to the thirty-five-to-life category under which Pavulak was sentenced—meaning that state laws "related to the sexual exploitation of children" remained a trigger for that sentencing range. *See id.*

Pavulak believes that the amendment limits the meaning of "sexual exploitation of children" to crimes involving visual depictions. He is wrong. That interpretation would ascribe the same meaning to the term "sexual exploitation of children" in the thirty-five-to-life category and the phrase "the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography" in the twenty-five-to-fifty category. Ordinarily, "we assume that Congress used two different [phrases] because it intended each [phrase] to have a particular, nonsuperfluous meaning." *United States v. Tupone*, 442 F.3d 145, 158 (3d Cir. 2006) (quoting *Bailey v. United States*, 516 U.S. 137, 146 (1995)). If Congress had wanted to implement Pavulak's interpretation, it could have explicitly done so by replacing "the sexual exploitation of children" in the thirty-five-to-fifty category with "the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography." It is hard to fathom why Congress, seeking to increase the penalties for sexual offenses against children, would have amended the twenty-five-to-fifty category to ensure that

54

crimes beyond those involving visual depictions were included while silently limiting the qualifying crimes to visual depictions for the thirty-five-to-life category. And given that Congress kept "so many prior *federal* offenses" that trigger the thirty-five-to-life category, it is "implausible" that Congress simultaneously "chose to restrict qualifying *state* offenses to child pornography production." *United States v. Sanchez*, 440 F. App'x 436, 440 (6th Cir. Aug. 23, 2011) (emphasis added).

Since Pavulak's mandatory life sentence under § 3559(e) did not exceed his maximum statutory sentence of life under § 2251(e), *Apprendi* is inapplicable. *United States v. DeSumma*, 272 F.3d 176, 181 (3d Cir. 2001) ("[W]hen the actual sentence imposed does not exceed the statutory maximum, *Apprendi* is not implicated."). It was therefore constitutional for the District Court to determine that Pavulak's prior Delaware convictions involved "conduct that would be a Federal sex offense" and thus triggered the mandatory life sentence in § 3559(e).

\* \* \* \* \*

Accordingly, we will affirm Pavulak's convictions and sentence.

55