NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3941
_____

UNITED STATES OF AMERICA

v.

CHRISTOPHER G. LEE,
                                        Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4-14-cr-00254-001)
District Judge:  Honorable Matthew W. Brann
_____

Submitted Under Third Circuit LAR 34.1(a)
June 15, 2017

Before:   SMITH, *Chief Judge*, JORDAN, and KRAUSE, *Circuit Judges.*

(Opinion Filed: July 12, 2017)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

Christopher Lee supervised high school aged minors who volunteered as docents

at the Boal Mansion Museum in Boalsburg, Pennsylvania.  After one of the young

_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

docents accused him of sexual assault, the police obtained a search warrant for the Boal

Mansion, where Lee resided. The search ultimately led to the acquisition of additional

search warrants which uncovered many images of the young docents cropped to focus on

their genitals and thousands of images of child pornography evidently downloaded from

the internet. Lee was convicted of receiving and possessing child pornography, sexual

exploitation of children, and, because of actions he took after his arrest, attempted

obstruction of justice.

On appeal, Lee argues that the state magistrate who issued a warrant to search for

child pornography did not have probable cause and therefore the evidence against him

should have been excluded. He also argues that the prosecution failed to prove that he

intended to produce sexually explicit images when he photographed the minors.

Additionally, he claims that it was unfairly prejudicial for the District Court to allow the

jury to hear certain sexually explicit stories that were found on Lee's computer. Finally,

he argues that there was insufficient evidence that he had taken a substantial step towards

the obstruction of justice. All of Lee's arguments lack merit, and we will, therefore,

affirm the District Court's rulings in all respects.

I.      **Facts**[1]

Lee operated the Boal Mansion Museum, and, as noted, he invited young people to

work there as docents. The teenagers, usually boys, would live at the Mansion during

---

[1] Because Lee challenges the sufficiency of the evidence supporting his conviction, we "view the evidence in the light most favorable to the government[.]" *United States v. Rosario*, 118 F.3d 160, 163 (3d Cir. 1997).

their time as volunteers.  In June 2014, police officers from the neighboring town of State College received a report of an indecent assault.  A 17-year-old who had traveled to Boalsburg to participate in the docent program alleged that Lee had attempted to touch his genitals and entice him to engage in sexual contact.  The youth claimed that, in preparation for those advances, Lee played a video on his laptop computer that included "weird music" that may have contained a "relaxation message" or been "hypnotic." (App. at 79, 81.)  Based on those allegations, State College Police Officers acquired warrants to search Boal Mansion and seize Lee's electronic devices.  They seized two cell phones, a laptop computer, a desktop computer, a portable hard drive, and a flash drive, all belonging to Lee.  The officers subsequently requested and were granted a warrant to search the contents of Lee's laptop in order to find the video recording as well as any communications between Lee and the youth's parents planning for his participation in the docent program.

A member of the Computer Forensics Unit of the Pennsylvania Attorney General's Office searched the laptop and found the video that had been described.  In the process, he also came across a video that depicted a naked and masturbating male who appeared to be under the age of eighteen.  The examination of the computer stopped while the State College Police received another warrant to search the electronic devices for child pornography and related files.  The application for the search warrant included a screenshot from the pornographic video.  The warrant was granted and the search uncovered additional child pornography.  More search warrants, acquired in conjunction with investigative efforts by the FBI, led to the examination of additional devices,

3

including an external hard drive, another portable hard drive, and several thumb drives. In total, the police seized eight devices containing sexual content involving minors, such as thousands of graphic images of prepubescent boys and lists of websites known for child pornography.

Some of the devices included photographs and videos that Lee had taken of the teenagers participating in the docent program. Lee had edited the images to focus on the children's genitals, buttocks, or pubic areas. For instance, one of the images shows a young man "getting out of the pool with his legs spread apart and wearing a bathing suit[.]" (App. at 511.) The image is cropped to focus on his crotch and "[h]is genitalia is evident beneath the clothing[.]" (*Id.*)

In addition to the images, the police found 26 sexually explicit stories featuring young boys. Lee placed images into the narratives to illustrate the stories. Some of the stories were illustrated with pornographic images of children that were not personally known to Lee. Other stories were illustrated with the cropped images of the youth from the docent program. The narratives were created under the computer user name of "Christopher Lee." The documents were comingled with Lee's personal documents and photos and used the same password for access.

Lee was arrested and charged with crimes related to the sexual exploitation of minors. While incarcerated, he made a series of phone calls to his cousin. Lee evidently got frustrated and asked the cousin to retrieve Lee's cell phone from the FBI and to contact an individual who could "wipe" the data from the phone. (App. at 965a, 966a, 971a.) When the cousin did not do so, Lee asked the cousin to give him the contact

4

information for the individual so that he could make that request himself. Despite his efforts, Lee was unsuccessful in getting the data on the phone deleted.

In total, the grand jury charged Lee with eight offenses, though only four are relevant to this appeal: receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2); possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B); sexual exploitation of children, with regard to the cropped images that Lee produced, in violation of 18 U.S.C. § 2251(a); and attempting to obstruct justice by tampering with evidence in violation of 18 U.S.C. § 1512(c)(1).[2]

Lee filed a motion to suppress the evidence seized from his electronic devices, claiming that the application for a warrant to search the electronic devices for child pornography did not provide a basis for finding probable cause. The District Court denied Lee's motion. Lee also filed a motion *in limine* seeking to prevent the sexual narratives from being read to the jury or at least to have them significantly redacted before the jury could hear them. The District Court refused to redact or exclude the three narratives selected by the government for presentation to the jury. In the Court's view, "[t]he narratives and images of children are … closely bound in both logical and proximate terms" and the narratives would provide the jury with "highly probative insights into [Lee's] intent, knowledge, and absence of a mistake[.]" (App. at 1025 (relying on Rule 404(b)(2)).) At trial, the government presented the selected narratives to

---

[2] Two counts stemming from the alleged molestation of the 17-year-old student were severed and the government moved to dismiss those counts before they could be brought before a jury. Two additional counts relating to the alleged sexual assault of another minor were also dismissed at the government's request.

5

the jury.  Lee was convicted on all the counts that went to the jury.  He then filed this timely appeal.

**II.    Discussion**[3]

Lee raises four challenges to his convictions.  We take them in the following order:  First, he argues that the evidence acquired from his electronic devices should have been suppressed as the result of an unlawful search.  Next, he argues that there was insufficient evidence to support his conviction for the sexual exploitation of minors.  He also argues that the District Court erred in allowing the jury to hear the sexually explicit narratives.  Finally, Lee argues that there was insufficient evidence that he attempted to obstruct justice.

*A.     The Motion to Suppress*

Lee argues that the affidavit accompanying the officer's request for a warrant to search for child pornography was insufficiently detailed and did not provide the magistrate with probable cause to issue a warrant.[4]  We review "the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercise[] plenary review of the District Court's application of the law to those facts." *United States v. Perez*, 280 F.3d 318, 336 (3d. Cir. 2002).  When evaluating whether

---

[3] The District Court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

[4] As discussed above, police officers executed several search warrants on Boal Mansion and Lee's electronic devices.  The first warrant to search Lee's computer was granted in order to find the video containing hypnotic music described by the minor who accused Lee of molestation.  Lee does not challenge the validity of that search warrant.

6

there was probable cause to issue a search warrant, "our role is not to make our own assessment as to whether probable cause existed. Rather, we are constrained to determine only whether the affidavit provides a sufficient basis for the decision the magistrate judge actually made." *United States v. Jones*, 994 F.2d 1051, 1057 (3d Cir. 1993).

A warrant is valid if, given the totality of the circumstances, there is a "fair probability that … evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). With respect to "a warrant application to search for child pornography, a magistrate must be able to independently evaluate whether the contents of the alleged images meet the legal definition of child pornography." *United States v. Pavulak*, 700 F.3d 651, 661 (3d Cir. 2012). That evaluation can occur "in one of three ways: (1) the magistrate can personally view the images; (2) the search-warrant affidavit can provide a sufficiently detailed description of the images; or (3) the search-warrant application can provide some other facts that tie the images' contents to child pornography." *Id.* (internal quotation marks and citation omitted). At least one of those ways was satisfied here, and arguably all three were.

First, the magistrate was provided with a screenshot of the youth depicted in the video. Lee argues that the screenshot was inadequate because the image is somewhat unclear in the copy of the application that is in the record. Lee gives us no reason to believe that the image was blurry when originally presented to the magistrate. But, because the District Court "ha[d] no knowledge as to whether the magistrate judge was

provided with a more-discernable copy[,]" it did not rely on that image. (App. at 16 n.2.) We likewise do not need to rely on it to conclude that probable cause was established.

Second, the affidavit provided the magistrate with a "sufficiently detailed" description of the images to conclude they contained child pornography. *Id.* The officers reported that the video depicted "a young white male standing naked and masturbating." (App. at 75.) This is not a case where the officers merely asserted that there was child pornography without "provid[ing] any further details about what the images depicted." *Pavulak*, 700 F.3d at 661. In addition, a total of three officers saw the pornographic video and affirmed that the youth in the video appeared to be a minor. The first was an officer of the Computer Forensics Unit with 25 years of law enforcement experience, including viewing thousands of images and videos of alleged child pornography. The other two officers also had experience with numerous child pornography investigations. A pediatrician also watched the video and indicated that the male in the video appeared to be under the age of eighteen. Lee argues that their declarations were inadequate because none was certain that the youth was a minor. While none of the four were certain about the age of the child, certainty is not a requirement for probable cause. *Gates*, 462 U.S. at 238 (asking whether there was a "fair probability" that "evidence of a crime will be found"). The description of the video and the declarations of multiple witnesses with extensive qualifications and professional experience were highly credible and provided probable cause.

Third, the magistrate could also rely on the circumstances surrounding the request for a warrant which "tie the [video's] contents to child pornography." *Pavulak*, 700 F.3d

8

at 661. Lee had been accused of molesting a teenage boy and that accusation had been partially corroborated by the discovery of the hypnotic video on the laptop. Even if it was not clear that the individual in the pornographic video was a minor, that was a reasonable inference for the magistrate to draw in light of the other evidence corroborating, at least in part, the accusations against Lee. *Cf. United States v. Ventresca*, 380 U.S. 102, 106 (1965) (explaining that the Fourth Amendment does not "den[y] … the support of the usual inferences which reasonable men draw from evidence" (citation omitted)). As the officers declared in the affidavit supporting the search warrant application, based on their "training and experience[,] … individuals who view child pornography and perpetrate [crimes] on minors often view multiple images and store and keep those images on the[ir] computers in various forms." (App. at 75.) Based on that inference, the magistrate could conclude that there was a "fair probability" that a search would uncover additional evidence of child pornography. *Gates*, 462 U.S. at 238. Accordingly, there was a sufficient basis for the magistrate's probable cause determination.[5]

### B. Sexual Exploitation of Minors

Lee's conviction for sexual exploitation of minors under 18 U.S.C. § 2251 was based on the cropped photographs found on Lee's electronic devices of the boys participating in the Boal Mansion docent program. On appeal, Lee challenges for the first time the sufficiency of the evidence supporting his conviction. Accordingly, we

---

[5] The parties argue over whether the good faith exception would apply in the event that we found that the search warrant was invalid. Because we conclude that the warrant was valid, we need not consider those arguments.

review the sufficiency of the evidence for plain error. *United States v. Gaydos*, 108 F.3d 505, 509 (3d Cir. 1997) (explaining that when a criminal defendant has not "fil[ed] a timely motion for a judgment of acquittal … we review the sufficiency of the evidence under a plain error standard"). Under plain error review, we will overturn the jury's verdict only if, viewing the evidence "in the light most favorable" to the government, no "rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Wolfe*, 245 F.3d 257, 261 (3d Cir. 2001) (citing *Jackson v Virginia*, 443 U.S. 307 (1979)).

Section 2251 provides that "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, … with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct," is guilty of sexually exploiting a minor. 18 U.S.C. § 2251(a). "[S]exually explicit conduct" is defined, in relevant part, as the "lascivious exhibition of the genitals or pubic area[.]" 18 U.S.C. § 2256(2)(A)(v). In *United States v. Knox*, 32 F.3d 733, 745 (3d Cir. 1994), we concluded that a "lascivious exhibition" is any "depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer." We rejected the requirement that such a depiction must involve nudity, *id.*, or "that the contours of the genitals or pubic area be discernible or otherwise visible through the child subject's clothing." *Id.* at 746. Instead, a depiction "requires only that the material depict some sexually explicit conduct by the minor subject which appeals to the lascivious interest of the intended audience." *Id.* at 747 (internal quotation marks omitted).

10

Lee concedes that at least some of the photographs in question were lascivious in nature.[6] (Reply Br. at 4 (explaining that "it was not disputed at trial that the cropped images at issue were lascivious" and that "[w]hether the photographs were lascivious was not an issue raised on appeal." (internal quotation marks omitted)).) Instead of arguing that the images were not lascivious, Lee argues that the government failed to establish that, when he took the pictures, he had the specific criminal intent required by § 2251. The government had to prove that Lee took his photographs and videos "for the purpose of producing any visual depiction" of a minor who was "engage[d] in[] any sexually explicit conduct[.]" 18 U.S.C. § 2251(a); *see also Knox*, 32 F.3d at 749 ("The harm Congress attempted to eradicate by enacting the child pornography laws is present when a photographer unnaturally focuses on a minor child's clothed genital area with the obvious intent to produce an image sexually arousing to pedophiles."); *United States v. Larkin*, 629 F.3d 177, 184 (3d Cir. 2010) (affirming a sexual exploitation conviction because the defendant had "designed the image depicted in th[e] photograph to arouse").

We conclude that there was sufficient circumstantial evidence to support the jury's conviction of Lee. In particular, the sexually explicit stories strongly suggest that Lee took the images with the requisite intent. The cropped images were closely connected to the narratives that Lee illustrated. For instance, one story describes a child wearing the

---

[6] As he should. The images were edited specifically to focus on the youths' pubic region. Some of the images were also cropped to suggest sexual conduct or a willingness to engage in sexual conduct, such as an image that appeared to depict one boy touching another boy's genitals, and another where a boy appeared to be touching himself. Thus, there was sufficient evidence for the jury to conclude that the images were sexually explicit in nature. *See United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989) (listing factors that we consider to determine if an image is sexually explicit).

same clothing that the child in a photograph wore. Another story has a child telling an adult to "let me sleep" and the accompanying image came from a video where one of the youth said the same thing to Lee. (App. at 542.) Given the close nexus between the images and the stories, it was reasonable to conclude that Lee took the photos with the intent of editing them and constructing a sexually explicit narrative around them.

Another factor that indicates intent is the large number of images and stories that the police uncovered. *Cf. United States v. Ortiz-Graulau*, 526 F.3d 16, 19 (1st Cir. 2008) ("[T]he number of photographs, many of sexually explicit poses, permits a strong inference that some of the conduct occurred in order to make the photographs."). With over two dozen stories, scores of sexually explicit cropped images, and thousands of images of child pornography found on Lee's devices, it was natural to conclude that Lee took pictures of youth with his pornographic predilection in mind rather than innocently. Viewing the evidence in the light most favorable to the government, a reasonable jury could infer that Lee took the photographs with the intent of creating child pornography. Thus, there was no plain error.

C.    *Motion* in Limine

Before trial, Lee filed a motion *in limine*, arguing that the sexually explicit stories that he wrote ought to be either redacted or excluded from the jury as inadmissible propensity evidence under Federal Rule of Evidence 404(b). The government responded that the stories qualified as evidence "intrinsic," (App. at 1027), to the charged offense and that there was therefore no need to consider whether the stories were admitted for a proper purpose under Rule 404(b). *See United States v. Green*, 617 F.3d 233, 245 (3d

12

Cir. 2010) ("Extrinsic evidence must be analyzed under Rule 404(b); intrinsic evidence need not be."). The District Court decided to apply Rule 404(b) and concluded that the stories were admissible to prove Lee's "intent, knowledge, and absence of a mistake[.]" (App. at 1025.) We review for abuse of discretion the District Court's decision to admit the evidence, and there was no such abuse.[7] *United States v. Daraio*, 445 F.3d 253, 259 (3d Cir. 2006).

Rule 404(b) prohibits the admission of evidence to prove action in conformity with a character or trait. Fed. R. Evid. 404(b). Thus, the stories could not be admitted to prove that Lee was prone to taking sexually explicit pictures because of his interest in pornographic narratives. However, Rule 404(b)(2) allows for the admission of evidence of a defendant's actions to prove, "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The stories were admissible under that rule for several reasons. First, as already noted, they were helpful in proving Lee's motive, intent, or plan. The stories also showed that the images were intentionally cropped to parallel certain story lines and to be titillating and lascivious in nature. *Cf. United States v. Vosburgh*, 602 F.3d 512, 538 (3d Cir. 2010) (admitting lawful but sexually suggestive images into evidence because they "tended to disprove any argument that [the defendant] unknowingly possessed" unlawful pornographic images);

---

[7] The government makes a strong case that the narratives were "intrinsic" because they "directly prove[d]," *United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010), that Lee had the required specific intent at the time when he took the images. However, because the narratives were clearly admissible under Rule 404(b), we do not need to decide whether they were in fact "intrinsic" to Lee's production of child pornography.

13

*United States v. Dornhofer*, 859 F.2d 1195, 1199 (4th Cir. 1988) (explaining that "[t]he fact that [a defendant] had a notebook containing pictures of nude children, [and] novels dealing with incest … makes [the defendant's] claim that he ordered the child pornography by mistake less probable"). Additionally, Lee argued that the images were cropped by someone other than him. But the content of the stories strongly suggested that they were written by him. In particular, the stories are told from the perspective of an adult male watching over teenagers and contain other parallels to Lee's life, such as the protagonist teaching the children in the story to play guitar as Lee did with the docents. Reading the stories to the jury thus helped to rebut Lee's central defense.

The District Court also was within its discretion when it determined that the danger of unfair prejudice from the narratives did not substantially outweigh their probative value. Fed. R. Evid. 403. The narratives were highly probative, showing that Lee took the pictures with the requisite intent. While the stories were graphic and unquestionably prejudicial, the prejudicial impact was not unfair. Moreover, any risk of unfair prejudice was limited by several actions taken at trial. *See Vosburgh*, 602 F.3d at 538 (noting in a similar context that the use of limiting instructions reduced the risk of prejudice). The government presented to the jury only "three documents selected from a set of twenty-six narrated stories[.]" (App. at 1037.) And the District Court gave limiting instructions noting that the "composition and possession of those fictional stories alone [is] not illegal." (App. at 1037.) It explained that the "writings were introduced for a limited purpose" under Rule 404(b). (App. at 1037-38.) While it was within the District Court's discretion to partially redact the narratives, it was not required to do so.

14

In light of the high probative value of the three stories and the limiting instructions read to the jury, there was clearly no abuse of discretion in allowing the jury to hear that sample of the narratives.

### D.      Obstruction of Justice

Finally, Lee argues that there was insufficient evidence that he attempted to obstruct justice by tampering with evidence. Specifically, he suggests that his conviction for that crime is invalid because he did not take a "substantial step" toward the obstruction of justice. *See United States v. Hsu*, 155 F.3d 189, 202 (3d Cir. 1998) (explaining that a conviction for attempt generally requires that a "defendant must (1) have the intent needed to commit a crime defined … and must (2) perform an act amounting to a 'substantial step' toward the commission of that crime"). Because Lee did not make a motion for a judgment of acquittal, we again review for plain error, *Gaydos*, 108 F.3d at 509, and under that standard it is easy to reject his argument.

The record shows that Lee took several substantial steps directed at obstructing justice. In particular, he told his cousin to retrieve his phone from the FBI and have someone wipe the data from it. When that did not happen, he then told his cousin to have the phone wiped remotely. He continued to ask his cousin if he had successfully had the phone wiped. And when his cousin refused to destroy the evidence as Lee demanded, Lee asked for the contact information for someone who could wipe the phone so that Lee himself could make the arrangements. In light of that evidence, the jury could reasonably conclude that Lee had taken a substantial step towards the obstruction of justice. *See United States v. Gordon*, 710 F.3d 1124, 1152 (10th Cir. 2013) (upholding a conviction

for attempted obstruction of justice when a defendant took a "tangible act" that "strongly corroborate[d] the firmness of the defendant's intent to carry out the substantive offense"). Accordingly, there was no error, let alone plain error, in Lee's conviction on that count.

III.    **Conclusion**

For the foregoing reasons, we will affirm Lee's conviction.