# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

_____

**UNITED STATES**
Appellee

**v.**

**Michael L. WILSON, Staff Sergeant**
United States Army, Appellant

**No. 23-0225**
Crim. App. No. 20210276

Argued January 17, 2024—Decided May 23, 2024

Military Judge: G. Bret Batdorff

For Appellant: *Major Robert D. Luyties* (argued); *Colonel Philip M. Staten, Lieutenant Colonel Autumn R. Porter, Captain Tumentugs D. Armstrong,* and *Michael Nanchanatt* (law student) (on brief); *Major Mitchell D. Herniak.*

For Appellee: *Captain Patrick S. Barr* (argued); *Colonel Christopher B. Burgess* and *Major Kalin P. Schlueter* (on brief).

Chief Judge OHLSON delivered the opinion of the Court, in which Judge SPARKS joined, except as to Parts II.B.1.c. and II.B.2., Judge MAGGS joined, except as to Part II.B.1., and Judge HARDY joined. Judge SPARKS filed a separate opinion, concurring in part and in the judgment. Judge MAGGS filed a separate opinion, concurring in part and in the judgment.[1]

---

[1] Although Judge Johnson recused herself prior to oral argument, we have a quorum to decide this case. C.A.A.F. R. 6(a).

Chief Judge OHLSON delivered the opinion of the Court except as to II.B.1.c.

In this case where Appellant was charged with sexual offenses involving two young girls, we conclude that the military judge did not abuse his discretion when he ruled that Appellant's journal—which contained graphic descriptions of sexual acts between children and adults—was admissible under Military Rule of Evidence (M.R.E.) 404(b) as proof of motive and intent regarding the charged offenses. In terms of his subsequent M.R.E. 403 analysis, we conclude that the military judge did not abuse his discretion when he ruled that the probative value of the journal entries was not substantially outweighed by the danger of unfair prejudice on the ground of motive. However, we conclude that he did abuse his discretion when he ruled that the probative value of the journal entries was not substantially outweighed by the danger of unfair prejudice on the ground of intent. Nevertheless, we conclude that this evidentiary error did not have a substantial influence on the findings or sentence in this case. Accordingly, we affirm the decision of the United States Army Court of Criminal Appeals (CCA).

## I. Background

The evidence adduced at trial demonstrated that Appellant repeatedly sexually abused his biological daughter, EW, over the course of many years, beginning when she was five years old. Appellant penetrated his daughter orally and anally with his penis. He also committed other nonpenetrative sexual acts, such as touching her breasts, buttocks, and genital area. Although EW briefly recanted her later allegations about this sexual abuse, the Government introduced evidence of a voice message in which EW confided in a friend that her mother was pressuring her to falsely recant. Moreover, the Government admitted into evidence the mother's federal conviction for witness tampering in this matter. Separately, Appellant had sexual intercourse with a twelve-year-old neighbor girl, SB.

In the course of investigating this case, law enforcement officers conducted a search of Appellant's house and found "a 'leather bound journal' [in] a nightstand near the bed in the home's master bedroom."[2] The military judge found: "The journal contained handwritten, graphic, and highly sexualized stories. Some stories included prose involving sexual behavior between adults. Other stories included prose involving sexual behavior between an adult and a child." The journal was dedicated to "Lori," which is the name of Appellant's wife. In a custodial interview with law enforcement officers, Appellant "acknowledged and admitted that the journal belonged to and was written by him."

The military judge in this case described the relevant journal entries as follows:

> One story describes a sexual act between a neighborhood child and an adult man in the neighborhood. The man in the story is named "Mr. Wilson." Another story describes sexual acts within a family, including the sexual assault of a minor girl by her older sibling. The third story takes place in Afghanistan and centers on Afghan parents who teach their virgin daughter how to have sex, including anal sex, with an American Soldier. In the story, the child engages in (a) sex with her father in order to prepare her for sex with the American Soldier, and (b) vaginal and anal sex with the American Soldier, who is a doctor. [Per his Soldier Record Brief, the Accused earned a GT score of 131, is a 68W Combat Medic, and his most recent "duty title" is "Health Care Sergeant" . . . .] . . . . During the story, her parents inform their daughter that what she will do with the American

---

[2] In his written ruling, the military judge referred to Appellant's notebook—which contained graphic handwritten descriptions about sexual acts between children and adults—as a "journal." In their briefs before this Court, both Appellant's counsel and Government counsel similarly use the word "journal." Brief for Appellant at 4, *United States v. Wilson*, No. 23-0225 (C.A.A.F. Nov. 20, 2023); Brief for Appellee at 4, *United States v. Wilson*, No. 23-0225 (C.A.A.F. Dec. 19, 2023). Therefore, for the sake of consistency and clarity, we use the same term.

> Soldier is "illegal" in "his country." [During her child forensic interview, Miss EW stated that the Accused shared that "in Japan . . . little girls could get married to adults because it's legal [in Japan] . . . and once married they could do what they wanted to them," or words to that effect]. At one point, the story switches to first person by the doctor. This story ends with the Doctor giving the child a gift, a necklace. [The Accused allegedly gave Miss SB a bracelet.]

(Bracketed sentences and third and fourth set of ellipses in original.)

In the course of Appellant's court-martial, the military judge issued a pretrial order setting the deadlines for various events, including an October 26, 2020, deadline for the Government to give notice about any M.R.E. 404(b) evidence it intended to introduce at trial. The Government generally complied with this deadline, but it notably did not list Appellant's journal in its M.R.E. 404(b) notice. However, the Government filed a November 16, 2020, motion to pre-admit the journal under M.R.E. 401 and 402 "as direct evidence of [Appellant's] intent to engage in sexual behaviors with minors." The defense opposed the motion because "the evidence . . . is irrelevant, improper, and prejudicial pursuant to M.R.E.s 402, 403, *and 404b*." (Emphasis added.) The defense asked the military judge to either sustain its objection or reserve its ruling until the trial.

At a November 30, 2020, Article 39(a), Uniform Code of Military Justice (UCMJ),[3] session on the Government's motion, trial counsel initially took the position that the notebook was "a statement of the accused" and did "not believe it [was] 404(b)." Counsel further explained that "it [was] relevant as direct evidence of the [Appellant's] intent to engage in sexual acts with—." However, before counsel could finish the sentence the military judge interjected, "Hold on, isn't that 404(b)? One of the 404(b) purposes specifically listed therein is to prove intent, right?" Eventually, the trial counsel stated: "[T]he government would concede

---

[3] 10 U.S.C. § 839(a) (2018).

that this can be considered 404(b), while that's not initially how we were evaluating it." In response, the defense argued that "the government has [not] established sufficient connection between an amorphous intent regarding what's contained on these pages, and any of the named victims in this case."

In a later written exchange with the military judge and the parties, the Government stated that it sought to introduce the stories from the journal on the grounds of both motive and intent. And on May 10, 2021, the military judge ruled: "[T]he defense's 402, 403 and 404(b) objections to the three journal entries are overruled. The government must, of course, still lay the foundation and overcome any other evidentiary hurdles for the journal evidence during trial." In an undated written ruling, the military judge provided a detailed analysis of his decision.

At trial, a panel with enlisted representation sitting as a general court-martial convicted Appellant, contrary to his pleas, of three specifications of rape of a child, three specifications of sexual abuse of a child, and one specification of sexual assault of a child in violation of Article 120b, UCMJ, 10 U.S.C. § 920b (2012 & 2018). Appellant elected to have the military judge sentence him, which resulted in a dishonorable discharge, confinement to two life sentences with the possibility of parole plus twenty additional years, and reduction to the grade of E-l. The convening authority approved the findings and sentence as adjudged. Subsequently, the military judge entered judgment.

At the CCA, the Government "concede[d] certain language should be excepted from multiple specifications," but otherwise disputed Appellant's assignments of error. *United States v. Wilson*, No. ARMY 20210276, 2023 CCA LEXIS 234, at *1, 2023 WL 3815238, at *1 (A. Ct. Crim. App. May 31, 2023) (summary disposition) (unpublished). The CCA agreed with the Government's concession but held that Appellant was not otherwise entitled to relief. *Id.* at *1-2, 2023 WL 3815238, at *1. The CCA affirmed the findings of guilty, as excepted, and upon reassessment, the CCA affirmed the adjudged sentence. *Id.* at *8 & n.7, 2023

WL 3815238, at *4 & n.7. This Court then granted review on the issue of whether the military judge committed prejudicial error by admitting Appellant's journal under M.R.E. 404(b).

## II. Discussion

In his briefs, Appellant makes three primary arguments. One of those arguments is, in essence, that the military judge abandoned his neutral role in the proceedings when he purportedly became the proponent of admitting the journal into evidence and coached the trial counsel about the best way to achieve that goal. We conclude, however, that this assertion lies outside the scope of the granted issue and we decline to discuss it further. Accordingly, we will turn our attention to the two remaining arguments in Appellant's briefs.

## A. Proper Notice

Appellant first avers that the Government did not comply with the requirements of M.R.E. 404(b) when trial counsel failed to provide the defense with proper notice before seeking the admission of the journal at trial. Appellant is correct that the Government failed to comply with the deadline imposed by the military judge's scheduling order. That scheduling order required the Government to provide notice by October 2020 of any M.R.E. 404(b) evidence that the prosecution intended to offer at trial, but trial counsel did not raise the prospect of seeking the admission of Appellant's journal until November 2020. We note, however, that the rules do not require the Government to provide notice based on the timing imposed by a military judge's scheduling order. Rather, M.R.E. 404(b)(2)(A)-(B) simply states that "*before trial*" the Government must provide the defense with "reasonable notice of the general nature of any [M.R.E. 404(b)] evidence that the prosecution intends to offer at trial."[4] (Emphasis added.)

---

[4] If the prosecution provides notice *during* trial, the evidence still may be admissible "if the military judge, for good cause, excuses [the] lack of pre-trial notice." M.R.E. 404(b)(2)(B).

In cases such as this one where the notice provided to the defense does not violate due process concerns, it is not the role of this Court to police compliance with a military judge's scheduling order. Instead, it lies within the sound discretion of the military judge to do so. On appeal, it then is the proper role of *this* Court to focus on the government's compliance with the provisions of the applicable rules. And upon engaging in this analysis in the instant case, we conclude that, consistent with the requirements of M.R.E. 404(b), the Government "before trial" provided the defense with "reasonable notice" of the evidence it sought to introduce during the court-martial.

We reach this conclusion for two reasons. To begin with, it was approximately six months before trial that the Government filed the motion to admit the journal. We concede that, as Appellant points out, the Government initially did not specifically argue that the journal was admissible under M.R.E. 404(b). Rather, trial counsel's stated basis for seeking the admission of the journal was that it would provide the panel members with "direct evidence of [Appellant's] intent to engage in sexual behavior with minors" under M.R.E. 401, 402, and 403. However, we note that "intent" is a basis for the admission of evidence under M.R.E. 404(b). Moreover, in response to the Government's motion, the defense specifically argued to the military judge that the journal was not admissible under M.R.E. 404(b), thereby implicitly acknowledging that this M.R.E. 404(b) issue was on the table. And importantly, during litigation of the motion, the military judge pointed out that the trial counsel's reason for seeking admission of the journal—that it demonstrated Appellant's "intent" when he committed the acts with the victims—implicated M.R.E. 404(b), and then trial counsel conceded this point. We therefore conclude that the Government complied with M.R.E. 404(b) because the defense was given reasonable

---

Because in the instant case the Government provided proper notice *before* trial, the military judge did not need to make a "good cause" determination.

notice before trial that the Government intended to seek
the admission of the journal.

Second, contrary to an argument seemingly made by
Appellant in his brief, we conclude that the military judge's
denial of the Government's motion to pre-admit the journal
did not vitiate the notice provided to the defense. Appellant
asserts that because the military judge in November did
not grant the Government's motion to pre-admit the jour-
nal but instead took a wait-and-see approach in regard to
its admissibility based on whether the Government could
eventually lay a proper foundation, Appellant's counsel
were left not knowing how best to prepare a defense. How-
ever, M.R.E. 404(b)'s notice requirement does not require a
military judge to rule on the government's motion before
trial, and from November 2020 onward the defense was on
notice that the Government *intended* to seek the admission
of the journal at trial. In fact, in an email to expert wit-
nesses before trial, the defense counsel wrote: "I anticipate
the Government will attempt to utilize [the journal stories]
to show our client's intent." Moreover, trial defense counsel
argued as follows regarding this evidentiary issue:

> [T]he defense's position is that the government
> failed to establish the foundation today for the
> court to rule on the admissibility of the enclosures,
> so should this court not exclude the evidence, the
> defense would ask that the court reserve its ruling
> on the admissibility of the evidence until trial,
> when a proper foundation could possibly be laid by
> the government.

Under these circumstances, there is no basis for this Court
to conclude that the Government violated the notice re-
quirement contained in M.R.E. 404(b).

## B. Admission of the Journal

Appellant's other main argument is that we should hold
that the military judge erred when he ruled that the jour-
nal was admissible under M.R.E. 404(b) and M.R.E. 403.
Although Appellant raises a number of valid points in the
course of his argument, we conclude there is an insufficient

basis for this Court to grant his requested relief of setting aside his convictions and sentence.

M.R.E. 404(b)(1)-(2) provides that "[e]vidence of a crime, wrong, or other act . . . . may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." If a military judge determines that the proffered evidence is properly admissible under M.R.E. 404(b), he or she then must conduct a M.R.E. 403 balancing test and exclude this otherwise admissible evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." This balancing test serves as a means of guarding against "[t]he general risk . . . that members will treat evidence of uncharged acts as character evidence and use it to infer that an accused has acted in character, and thus convict." *United States v. Staton*, 69 M.J. 228, 232 (C.A.A.F. 2010).

When the defense challenges on appeal a military judge's decision to admit M.R.E. 404(b) evidence at trial, this Court reviews the military judge's evidentiary ruling for an abuse of discretion. *United States v. Hyppolite*, 79 M.J. 161, 164 (C.A.A.F. 2019). Military judges abuse their discretion (1) if the findings of fact upon which they predicate their ruling are not supported by the evidence of record; (2) if they use incorrect legal principles; or (3) if their application of the correct legal principles to the facts is clearly unreasonable. *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010). As this Court observed in *United States v. Gore*, "[T]he abuse of discretion standard of review recognizes that a judge has a wide range of choices and will not be reversed so long as the decision remains within that range." 60 M.J. 178, 187 (C.A.A.F. 2004).

We conduct our assessment of the military judge's decision to admit evidence under M.R.E. 404(b) using the three-part test enunciated in *United States v. Reynolds*, 29 M.J. 105 (C.M.A. 1989). Specifically, *Reynolds* asks: (1) does the evidence reasonably support a finding that appellant committed a specific act; (2) does evidence of this act make a fact of consequence more or less probable; and

(3) is the probative value of the evidence of this act substantially outweighed by the danger of unfair prejudice? *Id.* at 109. "The second prong mirrors the relevance concerns reflected under M.R.E. 401 and M.R.E. 402, while the third prong reflects the concerns ordinarily handled under M.R.E. 403." *United States v. Yammine*, 69 M.J. 70, 77 (C.A.A.F. 2010).[5]

If the admitted evidence fails to meet any of the factors laid out in *Reynolds*, the military judge will have erred. 29 M.J. at 109. This Court must then assess the prejudice, if any, resulting from that error. *Yammine*, 69 M.J. at 78. Prejudice from erroneous evidentiary rulings is reviewed de novo. *United States v. Bowen*, 76 M.J. 83, 87 (C.A.A.F. 2017). For nonconstitutional evidentiary errors, the Government has the burden of demonstrating that the error "did not have a substantial influence on the findings." *Id.* (internal quotation marks omitted) (quoting *United States v. McCollum*, 58 M.J. 323, 342 (C.A.A.F. 2003)).

## 1. The *Reynolds* Factors

We now address each of the three *Reynolds* factors as they apply to the instant case. Before doing so, however, it is important to note that the military judge provided an admirably detailed written analysis in this case. As a consequence, the military judge's ruling is entitled to full deference by this Court under the abuse of discretion standard. *See United States v. St. Jean*, 83 M.J. 109, 113-14 (C.A.A.F. 2023).

### a. *Reynolds* Factor #1: Whether the evidence reasonably supports that the appellant committed the acts at issue

"The standard required to meet this first prong is low." *United States v. Thompson*, 63 M.J. 228, 230 (C.A.A.F. 2006). And in the instant case, the military judge properly determined that the evidence reasonably supported a

---

[5] Appellant argues that because using the journal stories implicates the First Amendment, we need to apply an enhanced analysis to evaluate the admissibility the stories. However, Appellant cites no binding authority for this point.

finding that Appellant wrote the journal entries that were at issue. Not only did law enforcement officers discover the journal in Appellant's bedroom, Appellant admitted that the journal "belonged to [him] and was written by him." Therefore, the evidence in the record reasonably supports the military judge's conclusion that Appellant "committed the act[]" of authoring the journal entries that were proffered by the Government under M.R.E. 404(b).

### b. *Reynolds* Factor #2: Whether a fact of consequence is made more probable by the existence of this evidence

The military judge admitted the journals on three of the grounds listed under M.R.E. 404(b)(2): motive, intent, and lack of mistake. However, because the military judge did not instruct the panel on lack of mistake, we need not discuss that ground. Instead, we will focus on the other two grounds under which the military judge said the journals were admissible: motive and intent.

### i. Motive

The military judge first reasoned that the journal entries were admissible under M.R.E. 404(b) because they demonstrated that Appellant had a motive to commit the charged misconduct. Specifically, the military judge ruled that the stories written by Appellant showed that sexual acts between adults and children are what sexually stimulated Appellant. The military judge explained that there was strong evidence of motive because the journal, which was "semen-stained," was found beside the marital bed and the characters and circumstances of the stories "describing explicit sexual activities between children and adults" shared similarities with Appellant's conduct. For example, (1) in one story, Appellant gave the adult character his last name, "Mr. Wilson"; (2) in another story the adult character was a soldier and a doctor while Appellant was a soldier and combat medic; and (3) Appellant's stories depicted incestuous relationships, and he committed sexual acts on his daughter. These factors caused the military judge to conclude that "the three stories constitute non-propensity evidence of the [accused's] motive to engage in all of the

charged offenses." As shown below, this analysis by the military judge is supported by our case law.

In *United States v. Whitner*, 51 M.J. 457 (C.A.A.F. 1999), the appellant was charged with forcible sodomy on another male soldier. The military judge admitted into evidence pornographic material depicting homosexual conduct that had been in the appellant's possession at the time of the alleged assault. *Id.* at 459. In affirming the appellant's conviction, we held as follows: "Motive evidence shows the doing of an act by a particular person by evidencing an emotional need in that person which could have incited or stimulated that person to do that act in satisfaction of that emotion." *Id.* at 461.

Another case, *United States v. Rhea,* 33 M.J. 413 (C.M.A. 1991), is particularly on point with the instant case, both in terms of the facts and in terms of the legal issues presented. Therefore, it is worth quoting that case at length:

> In *United States v. Mann*, . . . this Court was faced with a case which, on its relevant facts, was strangely like the one now before us. There, as here, the accused was charged with committing indecent acts and sodomy on his minor daughter; there, as here, the accused, in part, denied the acts had occurred at all; there, as here, the challenged evidence in part consisted of books depicting pornographic sexual acts between adults and children. "Consequently," there, as here, "appellant's sexual interests with regard to young girls . . . was a material issue for the members to resolve. . . ."
>
> . . . .
>
> . . . . We concluded there—and we conclude here—that the accused's books which were found at the crime scene and indicate a unique sexual interest precisely like that reflected in the charged acts "could reasonably be viewed as reflecting or tending to reflect his sexual desires during the charged acts" [and thus were admissible under M.R.E. 404(b) to demonstrate motive].

*Id.* at 422-23 (second alteration in original) (citations omitted).

The *Rhea* decision also expressly rejected the contention "that 'motive' evidence is not relevant—and, thus, not admissible—when the accused flatly denies the alleged acts." *Id.* at 422.

Consistent with *Whitner* and *Rhea*, as well as with a number of other cases,[6] we hold that the military judge did not abuse his discretion when he ruled that Appellant's journal entries satisfied the second prong of the *Reynolds* test regarding motive. In reaching this holding, we underscore one point: When conducting an M.R.E. 404(b) analysis, a military judge must always be on guard against the wolf of propensity that comes dressed in the sheep's clothing of motive. *United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009) (describing evidence improperly admitted under Fed. R. of Evid. 404(b) as "propensity evidence in sheep's clothing"). As we stated in *United States v. Hogan*: "[O]ne of the most basic precepts of American

---

[6] *See, e.g.*, *Yammine*, 69 M.J. at 78 (noting that this Court has "upheld the admissibility of 'possession of pornographic books, magazines, or videos concerning a particular partner or sexual act, at or near the scene of an alleged sex crime, around the time of that alleged offense,' as probative of intent or motive to commit a similar sex act with a similar partner under M.R.E. 404(b)" (quoting *Whitner*, 51 M.J. at 460)); *United States v. Ingram*, 846 F. App'x 374, 379 (6th Cir. 2021) ("courts have recognized the permissible use of pornography when it is similar to the charged sexual offenses"); *United States v. Torrez*, 869 F.3d 291, 301 (4th Cir. 2017) (holding no abuse of discretion when the trial judge admitted "evidence of pornographic videos showing violence against women who were sleeping, unconscious, or restrained" as evidence of modus operandi, motive, and intent); *United States v. Lee*, 701 F. App'x 175, 182 (3d Cir. 2017) (holding that sexually explicit stories that the appellant wrote were admissible to prove motive, intent, or plan); *United States v. Layne*, 43 F.3d 127, 133-34 (5th Cir. 1995) (finding no abuse of discretion when the trial court admitted two pornographic magazines found in the appellant's home as "relevant to showing that [the appellant] had a knowing interest in the child pornography").

jurisprudence [is] that an accused must be convicted based on evidence of the crime before the court, not on evidence of a general criminal disposition." 20 M.J. 71, 73 (C.M.A. 1985). In the instant case, we are convinced that the military judge was mindful of this concern and properly distinguished between propensity evidence and motive evidence, and that he correctly ruled that the journal entries were admissible under M.R.E. 404(b) on the ground of motive.

### ii. Intent

The military judge also ruled that the journal entries were admissible at trial under M.R.E. 404(b) because they demonstrated Appellant's intent when he committed his acts upon the child victims. Specifically, the military judge ruled that:

> [T]he three journal entries and the alleged offenses share several striking similarities; including, but not limited to: sex between an adult male and minor female who live in the same neighborhood, sex between older males and younger females who are members of the same family, and sex between an American male Soldier in the medical profession and a minor female. . . . [A] journal author's state of mind when writing graphic and detailed stories regarding sex between children and adults may possess a sufficiently similar state of mind during the commission of the alleged offenses to make the evidence of the prior acts relevant on his intent during the commission of the offenses.

This ruling by the military judge is supported by some of this Court's precedent. For example, in the *Whitner* case cited above, we held that "depending upon the circumstances of a particular case," an accused's possession of pornographic material depicting a particular sex act may be admissible under M.R.E. 404(b) as evidence "of his intent or state of mind" at the time of the offense. 51 M.J. at 460. We reached a similar conclusion in *United States v. Orsburn*, 31 M.J. 182 (C.M.A. 1990). There, the appellant was accused of sexually assaulting his young daughter. *Id.* at 183. This Court held that the military judge did not abuse

14

his discretion when he admitted into evidence for "intent" purposes pornographic books "dealing with sex with children or young girls" that were "found at the situs of the alleged sexual offenses, around the time of these offenses, and in an area under at least partial control of appellant" and that had titles such as "*Degraded, Delighted Daughter*," "*Chained Youth: Girls In Bondage*," and "*The Whore Makers*." *Id.* at 183, 187.

We acknowledge that our decision in a different case, *United States v. Morrison*, 52 M.J. 117 (C.A.A.F. 1999), may have muddied the waters. In *Morrison*, the appellant was charged with sexually abusing the nine-year-old daughter of a family friend. *Id.* at 119. At trial, the military judge admitted evidence that the appellant previously had sexually abused his own daughter over an eight-year period, starting when the daughter was between four and six years old. *Id.* at 120. One of the multiple grounds cited by the military judge for admitting the evidence was "intent." *See id.* at 121. On appeal, the *Morrison* court said that the evidence had "some tendency" to show intent, but also said that "[t]he charged acts were so overtly sexual that motive and intent were not in issue" and concluded that the proffered evidence was not admissible under the third prong of *Reynolds. Id.* at 123.

To the extent *Morrison* may be viewed as standing for the proposition that (a) intent is not "in issue" in those sexual assault cases where the underlying conduct, standing alone, is overtly sexual in nature, and (b) under such circumstances "intent evidence" automatically fails to survive a M.R.E. 403 analysis or to meet the second prong of the *Reynolds* test, that conclusion is not supported by our other case law. In a series of precedents over the years this Court has held that intent is *always* at issue in a criminal case—even when the defense chooses not to contest it. For example, in *United States v. Harrow*, this Court held that "evidence of intent . . . may be admitted *regardless* of whether a defendant argues lack of intent because every

15

element of a crime must be proven by the prosecution."[7] 65 M.J. 190, 202 (C.A.A.F. 2007) (emphasis added) (citing *Estelle v. McGuire*, 502 U.S. 62, 69 (1991)). And in *United States v. Mann*, 26 M.J. 1, 4 (C.M.A. 1988), our predecessor court stated that the appellant's intent in committing the sexual acts "had become a necessary and contested issue" in the case by virtue of the appellant's not guilty pleas and trial testimony. Moreover, as noted above, *Morrison* itself states that—even under the facts of that specific case where the charged acts were "overtly sexual"—the proffered M.R.E. 404(b) still had "some tendency" to show intent. 52 M.J. at 123.

In light of these considerations, we believe the best reading of *Morrison* is that in seeking to address and resolve in a concise manner the multiple reasons offered by the government for admitting the daughter's testimony under M.R.E. 404(b), the Court in its explanation conflated the second prong of *Reynolds* with the third prong of *Reynolds*. *See Morrison*, 52 M.J. at 123. We want to emphasize that this is not an analytical approach that we adopt or condone. Prong two of the *Reynolds* test presents a binary question: Does M.R.E. 404(b) evidence make a fact of consequence more probable? If the answer is no, the evidence is inadmissible under M.R.E. 404(b). If, however, the answer is yes, then and only then will this Court or a service court move on to prong three of the *Reynolds* test to assess the probative value and prejudicial effect of that evidence.

In the instant case we conclude that, consistent with the requirements of the second prong of *Reynolds*, the journal entries at issue had at least *some* tendency to show intent in regard to the conduct with which Appellant was charged. This is especially true in regard to the nonpenetrative offenses, such as when Appellant touched the buttocks of his

---

[7] We further note that from a practical perspective, the Government may have no idea whether the defense will choose to contest the issue of intent until the defense rests its case, which would be too late for the Government to introduce evidence on this point.

young daughter. Therefore, we conclude that the military judge did not abuse his discretion when he reached the same conclusion. Indeed, even if we were to view the penetrative acts in isolation, and even if we were to read *Morrison* as saying that the journal entries were *in*admissible under the second prong of *Reynolds*, the rift with cases such as *Harrow*, *Whitner*, and *Mann* would remain. Under this scenario, our Court would have "dealt inconclusively" with this aspect of the law, and the military judge could not have abused his discretion because it cannot be said that he misunderstood the law or that his ruling was outside the range of reasonable choices. *Harrow*, 65 M.J. at 202; *Gore* 60 M.J. at 187.

### c. *Reynolds* Factor #3: Whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice[8]

Under M.R.E. 404(b), motive evidence and intent evidence are distinct from one another and the government's purpose in seeking to introduce such evidence is similarly distinct. Motive evidence is used to demonstrate that the accused committed the criminal acts with which he is charged; intent evidence is used to demonstrate the accused's state of mind when he committed those acts. This distinction may have consequences when a military judge conducts his or her M.R.E. 403 analysis and when this Court conducts its analysis of the third prong in *Reynolds*. Specifically, the probative value and/or the prejudicial effect of the *same* evidence at the *same* trial may vary significantly based on whether that evidence is being examined on "motive"

---

[8] Although Appellant challenges other aspects of the military judge's M.R.E. 403 analysis beyond its analysis of unfair prejudice (such as by arguing the military judge ignored this Court's "waste of time precedent" in his ruling), we conclude that the military judge did not abuse his discretion regarding any of these additional considerations raised by Appellant.

grounds or on "intent" grounds. Therefore, it is appropriate in this case to examine each of these bases separately.[9]

### i. Motive

### Probative Value vs. Prejudicial Effect

Here, Appellant's defense at trial was that the testimony of the two child victims was insufficiently credible to prove that Appellant was guilty. In other words, a primary issue in contention during the court-martial was whether Appellant actually committed the conduct which the victims alleged. Thus, based on the facts of this case, it was not an abuse of discretion for the military judge to conclude that the journal entries were highly probative because "[k]nowingly writing stories containing the content in the three journal entries constitutes some circumstantial evidence from which a reasonable factfinder could reasonably find that, at the time of the alleged offenses, [Appellant] . . . had a motive to commit the offenses alleged on the charge sheet."

In determining the prejudicial effect of admitting the journal in this case, we underscore the repugnant nature

---

[9] We do not believe this approach "unnecessarily complicates" things. *United States v. Wilson*, __ M.J. __, __ (1) (C.A.A.F. 2024) (Sparks, J., concurring in part and concurring in the judgment). Rather, it clarifies our legal analysis. We again emphasize that intent and motive have distinct purposes at trial, and thus the probative value and prejudicial effect of the evidence may diverge based on the reason for its admission. Therefore, each ground of admissibility should be evaluated separately. Otherwise, cases may arise where evidence is properly admissible for only a single purpose under M.R.E. 404(b)(2) after analyzing the third *Reynolds* factor, but the military judge improperly instructs the panel members that the evidence can also be considered for a host of other reasons under M.R.E. 404(b)(2). Absent a separate analysis of the probative value and prejudicial effect of the evidence under each M.R.E. 404(b)(2) purpose instructed upon by the military judge, this Court would not be able to discern under which basis the evidence was properly admitted, and as a result, could not fully assess whether the military judge's error materially prejudiced the substantial rights of the accused.

of the entries and the likely negative effect they could have had on the panel members. Indeed, in balancing the probative value and prejudicial effect of admitting into evidence Appellant's journal, we may have reached a different assessment than the military judge did. However, that point is irrelevant because we are not conducting a de novo review of this issue. Rather, we are engaging in an abuse of discretion analysis. And this Court must exercise " 'great restraint' " when it comes to concluding that a military judge abused his or her discretion in the course of balancing the probative value and prejudicial effect of a piece of evidence. *United States v. Humpherys*, 57 M.J. 83, 91 (C.A.A.F. 2002) (quoting *United States v. Harris*, 46 MJ 221, 225 (C.A.A.F. 1997)). Accordingly, in the instant case, we decline to disturb the military judge's decision to admit Appellant's journal as motive evidence.

### ii. Intent

### Probative Value vs. Prejudicial Effect

As noted above, under *Reynolds* factor number 2 Appellant's intent was placed at issue by virtue of his pleas of not guilty. However, by their very nature, the penetrative acts which Appellant was accused of committing with EW and SB overwhelmingly demonstrated Appellant's intent (i.e., his intent to satisfy his sexual desires) if he actually committed those acts. As a consequence, under the circumstances of this case the journal had very limited probative value under *Reynolds* factor number 3 in terms of proving Appellant's intent for the penetrative offenses. Even with the nonpenetrative offenses, the panel members already had ample evidence in front of them demonstrating Appellant's intent when he touched his young daughter's breasts, buttocks, and genital area. Therefore, we once again conclude that the journal had limited probative value on this point.

In terms of the prejudicial effect of the journal, the entries contained therein were highly inflammatory. As noted above, they described in graphic detail the sexual abuse and exploitation of young females by adults. The panel

members presumably were repulsed by the notion that Appellant was the type of person who would author these types of stories, and thus there was the very real risk that the panel members would improperly conflate Appellant's moral culpability for writing these entries with his criminal responsibility for committing the charged offenses. As noted above, this Court has observed that there is a "general risk . . . that members will treat evidence of uncharged acts as character evidence and use it to infer that an accused has acted in character, and thus convict." *Staton*, 69 M.J. at 232.

Because Appellant's journal had little probative value on the issue of intent, this factor must be accorded little weight in the course of conducting the balancing test under M.R.E. 403 and the third prong of *Reynolds*. Further, because Appellant's journal had the potential to pose a high risk of prejudice, this factor must be accorded great weight during the balancing test. Therefore, although a high standard of appellate review applies here, we conclude that the military judge abused his discretion when he admitted the journal into evidence on the ground of intent for those offenses involving penetration. Thus, we must move onto a prejudice analysis.

### 2. Prejudice

In assessing prejudice, we underscore that the military judge in this case conducted an in-depth analysis of the issues, made no clearly erroneous factual findings, was not influenced by an erroneous view of the law, did not abuse his discretion when he determined that the prejudicial effect of the motive evidence did not outweigh its probative value, and gave the panel members a sufficient limiting instruction. We simply conclude that he abused his discretion when he determined that the probative value of the intent evidence was not substantially outweighed by its prejudicial impact. It is through this narrow aperture that we must assess the prejudice to Appellant.

In *United States v. Acton,* 38 M.J. 330, 334 (C.M.A. 1993), our Court determined that "[a]ny prejudicial impact

based on the shocking nature of the evidence was diminished by the fact [that] the same conduct was already before the court members" for other, proper purposes. We adopt the same reasoning here. The graphic and disturbing sexual acts that were described in Appellant's journal were of the same nature as the graphic and disturbing sexual acts that the child victims in this case described to the panel members. And importantly, *the journal itself* was properly before the panel members for their consideration as motive evidence.

Our conclusion that the prejudicial effect of the military judge's erroneous evidentiary ruling was minimal is bolstered by the fact that he gave the panel members a limiting instruction.[10] This instruction correctly explained to the panel members that they could *not* use Appellant's journal for propensity purposes. Specifically, the military judge stated: "You may not consider this evidence for any other purpose, and you may not conclude from this evidence that the accused is a bad person or has general criminal tendencies and that he therefore committed any of the charged offenses." We recognize, of course, that the military judge erroneously instructed the panel members that the journal could be used as evidence of both motive *and* intent. However, as explained above, the military judge did not abuse his discretion when he concluded that the journal satisfied the second *Reynolds* prong for intent because the stories at issue were indeed logically relevant on this point. As also explained above, the journal was already properly before the panel members on the ground of motive. We therefore conclude that the prejudicial effect of the military judge's admission of the journal on intent grounds was negligible.

---

[10] To the extent Appellant now complains about the adequacy of the military judge's limiting instruction, we note that trial defense counsel expressed no similar concerns during the court-martial. Rather, the defense acquiesced in the language of the instruction when it was proposed and given. Therefore, this issue has been waived on appeal. *See United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020).

Under these circumstances, we cannot conclude that the improperly admitted "intent" evidence had a "substantial influence" on the findings and sentence in this case. *Bowen*, 76 M.J. at 87.

### III. Conclusion

We affirm the judgment of the United States Army Court of Criminal Appeals.

Judge SPARKS, concurring in part and in the judgment.

I join the judgment of the Court. I also join Parts I, II.A., II.B.1.a., II.B.1.b., and III of Chief Judge Ohlson's opinion. However, I cannot join Parts II.B.1.c. and II.B.2. of Chief Judge Ohlson's analysis.

## I. The Third *Reynolds* Prong

I believe Chief Judge Ohlson unnecessarily complicates the third prong of the *Reynolds* analysis by separately weighing the probative value of motive and intent against the danger of unfair prejudice. In discussing the third prong of the *Reynolds* analysis, Chief Judge Ohlson states that "the probative value and/or the prejudicial effect of the *same* evidence at the *same* trial may vary significantly based on whether that evidence is being examined on 'motive' grounds or on 'intent' grounds. Therefore, it is appropriate in this case to examine each of these bases separately." *United States v. Wilson*, __ M.J. __, __ (17-18) (C.A.A.F. 2024). I am concerned that this approach to the third prong of the *Reynolds* analysis is inapposite to our precedent and may lead to confusion in the future.

The third prong of the *Reynolds* analysis requires this Court to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989). I agree with Chief Judge Ohlson that Appellant's journal has at least some probative value of both motive and intent. In my view, it is the combined probative value of motive and intent that we must weigh against the danger of unfair prejudice when deciding whether the journal was admissible. To my knowledge, none of our prior decisions applying *Reynolds* have applied the third prong as Chief Judge Ohlson does here, nor did the military judge in this case do so. *See, e.g., United States v. Barnett*, 63 M.J. 388, 394-97 (C.A.A.F. 2006) (Court did not break third prong of *Reynolds* analysis into subcategories); *see also United States v. Whitner*, 51 M.J. 457, 461-62 (C.A.A.F. 1999) (Court analyzed the probative value of the evidence against the potential for unfair prejudice without breaking apart the probative value of intent and the probative value

of motive); *United States v. Johnson*, 49 M.J. 467, 474-75 (C.A.A.F. 1998) (Court did not break down third prong of *Reynolds* analysis despite Military Rule of Evidence (M.R.E.) 404(b) evidence being admitted for negation of accident and a common scheme or plan); *United States v. Ruppel*, 49 M.J. 247, 250-51 (C.A.A.F. 1998) (M.R.E. 404(b) evidence admitted for plan or design and intent purposes. Court did not break down third *Reynolds* prong into subparts); *United States v. Miller*, 46 M.J. 63, 66 (C.A.A.F. 1997) (M.R.E. 404(b) evidence was admitted to show scheme or common plan and intent. Court did not break down third *Reynolds* prong into subparts).

Chief Judge Ohlson warns:

> Absent a separate analysis of the probative value and prejudicial effect of the evidence under each M.R.E. 404(b)(2) purpose instructed upon by the military judge, this Court would not be able to discern under which basis the evidence was properly admitted, and as a result, could not fully assess whether the military judge's error materially prejudiced the substantial rights of the accused.

*Wilson*, __ M.J. at __ (18 n.9). However, the second prong of the *Reynolds* analysis already requires that military judges determine the logical relevance of the evidence to prove something other than propensity. *Reynolds*, 29 M.J. at 109; *see also* M.R.E. 404(b)(2) (evidence of another crime, wrong, or act, may be used to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"). Because the second *Reynolds* prong requires military judges to make findings of logical relevance, it would already be error for a military judge to allow members to consider the evidence for any purpose for which is it not logically relevant.

To conclude, as Chief Judge Ohlson does, that military judges must weigh the probative value of the same evidence at the same trial against the danger of unfair prejudice multiple times, based on what that evidence is being offered to prove, easily leads to irrational results. We need look no further than the instant case to see how this approach to the third *Reynolds* prong is problematic. In this

case, Chief Judge Ohlson concludes that Appellant's journal had at least some tendency to show his intent (logical relevance). *Wilson*, __ M.J. at __ (16-17). It is without dispute that M.R.E. 404(b) evidence may be used to prove intent. M.R.E. 404(b)(2). Chief Judge Ohlson determines that the probative value of the journal to prove motive alone outweighed the danger of any unfair prejudice from admitting the journal and therefore concludes that the journal was properly admitted as M.R.E. 404(b) evidence of Appellant's motive. *Wilson*, __ M.J. at __ (18-19). However, because Chief Judge Ohlson insists on weighing intent and motive separately under the third *Reynolds* prong, he concludes that it was error for the military judge to allow the members to consider properly admitted M.R.E. 404(b) evidence (the journal) for a permitted M.R.E. 404(b) purpose (proving intent). It is no surprise that Chief Judge Ohlson concludes this "error" to be harmless.

Because I think it unnecessary to separately weigh the probative value of motive and intent against the danger of unfair prejudice, I conclude that the military judge did not abuse his discretion when he ruled that the probative value of Appellant's journal—proving his motive and intent— was not substantially outweighed by the danger of unfair prejudice. Because I ultimately conclude the military judge did not abuse his discretion, I do not find it necessary to conduct a prejudice analysis.

## II. Conclusion

I concur in the Court's judgment affirming the judgment of the United States Army Court of Criminal Appeals.

Judge MAGGS, concurring in part and in the judgment.

I concur in Chief Judge Ohlson's opinion except for Part II.B.1. In Part II.A., Chief Judge Ohlson concludes that the Government did not violate the notice requirement contained in Military Rule of Evidence (M.R.E.) 404(b). I agree with this reasoning. In Part II.B., Chief Judge Ohlson reaches two conclusions. The first, in Part II.B.1., is that the military judge abused his discretion under M.R.E. 403 when he admitted excerpts from Appellant's journal into evidence. The second, in Part II.B.2., is that admitting the evidence did not prejudice Appellant because the evidence did not substantially influence the findings or the sentence. I join Part II.B.2. because, even assuming that the military judge abused his discretion in admitting the journal excerpts into evidence under M.R.E. 403, I agree with the conclusion that the error did not materially prejudice Appellant. I do not join Part II.B.1. because, given the well-reasoned determination that admitting the journal excerpts ultimately had only "negligible" consequences in this case, it is unnecessary to decide the complicated question of whether the military judge underestimated the "potential" risk of admitting them.

I concur in the judgment affirming the judgment of the United States Army Court of Criminal Appeals.